JOHN WEBBER and another *vs.* REUBEN B. DUNN and others.

Kennebec. Opinion August 4, 1880.

*Recission. Burden of proof. Contract; change of; construction of. Practice.*
*Evidence. Compromise offers. Exceptions.*

When it is proved or admitted that a contract, upon which suit is brought,
was made as declared by the plaintiff, and the defendant claims that it was
afterwards rescinded, the defendant takes the affirmative of that issue, and
the burden is upon him to prove it.

The defendants for good and sufficient consideration agreed with the plaintiff
to pay the assessments upon thirty-eight and one-half shares of capital stock
in a corporation, out of one hundred shares subscribed for by the plaintiffs;
this subscription was afterwards cancelled and the plaintiffs subscribed for a
like number of shares upon a different subscription agreement. *Held,* that if
the change in the subscription was made by agreement between the plaintiffs
and the corporation and assented to by the defendants, they, the defendants,
would be liable under their agreement to pay the assessments upon thirty-
eight and one-half shares of the new subscription; and instructions, which
thus submitted the question to the jury were correct.

The defendants agreed in writing to pay the plaintiffs a commission of five per
cent. upon stock taken and paid in on subscriptions made by the plaintiffs in
a corporation, or obtained of others and guaranteed by them, not exceeding
$20,000 (not including a subscription then made;) and a commission of two
per cent. upon stock taken and paid in beyond such sum of $20,000 upon
subscriptions made or obtained by the plaintiffs. *Held,* that by the terms of
the contract the plaintiffs were entitled to five per cent. on such sums as
they might guarantee not exceeding $20,000, and two per cent. on the sums
subscribed and paid in which they did not guaranty.

It is the duty of counsel to call the attention of the presiding judge to a point
which he desires to raise, but did not raise during the trial, when he was
present and presented requests for instructions upon such other points as he
desired to raise, and heard the charge to the jury and knew the judge did not
allude to this point. It is too late for him to raise it for the first time in the
law court.

When the parties were at issue as to the fact, whether or not certain admissions
and offer testified to were made while the parties were trying to compromise
the question of facts, should be submitted to the jury with instructions not
to consider the evidence, if they found that the parties were thus trying to
compromise when the admissions and offer were made.

Exceptions "to the rejection of evidence offered . . . and the admission of
evidence . . . objected to . . . in the several instances mentioned in the
official report of the case," are irregular and ought not to be encouraged.

ON EXCEPTIONS AND MOTION.

The facts appear in the opinion.

*E. F. Pillsbury* and *E. F. Webb*, for the plaintiffs, cited: *Utely* v. *Donaldson*, 94 U. S. 49; *Murray* v. *Harway*, 56 N. Y. 347; *Storm* v. *U. S.* 94 U. S. 83; *Cole* v. *Cole*, 33 Maine, 542; *Rowell* v. *Montville*, 4 Greene, 270; *Plummer* v. *Currier*, 52 N. H. 287; *Snow* v. *Bachelder*, 8 Cush. 517; Greenl. on Ev. § 192; *Perkins* v. *Railroad*, 44 N. H. 225.

*O. D. Baker*, for the defendants.

On the questions raised by the exceptions:

I. Upon the issue as to whether the contract between the parties was rescinded, the burden is on the plaintiffs, and does not shift. It is for them to show that the contract they rely on not only was once made, but was existing and in force when sued on. We say it never has been, and no longer could be performed, but was rescinded by its own limitations. Where the plaintiff disables himself from performing his contract, or assents to the acts of third persons which make its performance impossible, and the defendant is without fault, the defendant alone may abandon and rescind the contract on notice, whether the plaintiff assents or not. Chitty Contracts, 672, (10th edition). See *Hoare* v. *Remins*, 5 H. & N. 19; Coke Lit. (206, a) (206, b); Leake Contracts, 366. "And generally when one fails to perform his part of the contract, or disables himself from performing it, the other party may treat the contract as rescinded." 2 Pars. Contracts, 678; *Keys* v. *Harwood*, 2 C. B. 905; *Planche* v. *Colburn*, 8 Bing. 906. "If the act of one party be such as necessarily to prevent the other from performing on his part according to the terms of his agreement, the contract may, I think, be considered as rescinded." *Dubois* v. *Canal Co.* 4 Wend. 285.

II. When the first subscription of this plaintiff was cancelled that was an end to the defendants' agreement to pay the assessments on thirty-eight and one-half shares. It may be said that the defendants have received the $3,850, and that would be a continuing consideration. But a past and executed consideration can never support an express promise. *Hopkins et ux.* v. *Logan*, 5 M. & W. 241; *Per Lord Denman*, *C. J. in Roscorla* v. *Thomas*, 3 Q. B. 234; *Per Maule*, *J. in Elderton* v. *Emmons*, 4 C. B. 496.

III. The plaintiffs seek to recover commissions here on an express promise, that is, a promise to pay for their services not a reasonable but a contract rate. Acts in the nature of estoppel can never raise an express promise but only such as the law will imply, and that, if anything, would be to pay not specific commissions, but a reasonable compensation for the plaintiffs' time and services.

IV. The instruction that the guaranty was a valid guaranty of existing subscriptions was erroneous. If the contract at this time applied only to new subscriptions, the guaranty was not valid, because it applied only to the old. If the contract still applied to the old subscriptions, then the guaranty was void because not given till subscriptions lapsed or cancelled. Even if the guaranty applied to existing subscriptions, it is not valid because without consideration, and therefore not enforceable by the company. A guaranty like every other promise must have a consideration to support it. *Ware* v. *Adams*, 24 Maine, 177; *Tenney* v. *Prince*, 4 Pick. 385. And this consideration must move from the plaintiff. Leake Contracts, 221, 313; *Crow* v. *Rogers*, Strange, 592; *Price* v. *Easton*, 4 B. & Ad. 433; *Smart* v. *Chell*, 7 Dowl. 781; 2 Williams' Saunders, 137, (g.)

The plaintiffs did not notify the defendants that they had given the guaranty. The rule as established by the cases is that where the defendant contracts to pay on doing of some act by the plaintiff, which when done, lies peculiarly or more properly in the knowledge of the plaintiff, notice thereof must be given or no liability attaches. 1 Chitty Pleading, 360; 2 Williams' Saunders, 62 (a); Leake on Contracts, 339; *Dawson* v. *Wrench*, 3 Exch. 359; *Rippinghall* v. *Lloyd*, 5 B. & Ad. 742; *Lent* v. *Padelford*, 10 Mass. 230; *Colt* v. *Root*, 17 Mass. 229; *Gabb* v. *Morse*, 1 Bulstrode, 44; *Holmes* v. *Twist*, Hobart, 51; *Towle* v. *Hoggan*, Cro. James, 492; *Bradley* v. *Toder*, Cro. James, 228; *Hobart* v. *Hilliard*, 11 Pick. 143; *Babcock* v. *Bryant*, 12 Pick. 132; *Dix* v. *Flanders*, 1 N. H. 246; *Watson* v. *Walker*, 23 N. H. (3 Fost.) 471. The defendants object to that part of the charge relating to the admissibility of an offer made by the defendants to reassign the mortgage and notes and to pay $1,000, as leaving

to the jury a question of law.    Whether the offer was by way of compromise and therefore not competent evidence is a question of law for the court, and not of fact for the jury.    *Davis* v. *R. R.* 11  Cush.  506 ;  *Snow* v. *Batchelder*,  8  Cush.  513 ;  Lord, Mansfield, 1  Buller,  N. P.  236 ;  *Marsh* v. *Gold*, 2 Pick. 284 ; *Gerrish* v. *Sweetser*, 4 Pick.  377 ; *Dickinson* v. *Dickinson*, 9 Met. 471 ; *Snow* v. *Bachelder*, 8 Cush. 516 ; *Emerson* v. *Boynton*, 11 Gray,  395.

*Joseph Baker*, for the defendants, argued the questions arising on the motion to set aside  the verdict as against evidence.

LIBBEY, J.    A statement of the leading facts of this case is necessary for a just understanding of the questions of law raised by the exceptions.

On the 11th of February, 1874, the defendants and seven others were incorporated a manufacturing corporation by the name of the Lockwood Cotton Mills, with power to manufacture cotton, wool and flax, in Waterville and Winslow ; to purchase and hold real and personal estate, not exceeding two millions dollars in value, and to build and erect such buildings and machinery as their convenience may require.

The corporation was organized, and on the 23d of February, 1874, the capital stock was fixed at $600,000, in shares of $100 each, and on the same day, by vote of the directors, books were opened for subscriptions to the stock, with the proviso "that no assessments shall be laid until four thousand shares shall have been subscribed for."

On the 30th of June, 1874, the plaintiffs and defendants made the following agreement :

"This agreement between Webber & Haviland of Waterville, Maine, of the first part, and Reuben B. Dunn & Sons of said Waterville, this thirtieth day of June, A. D. 1874, witnesseth, that said Webber & Haviland have this day assigned and caused to be assigned, certain notes and mortgages against Daniel M. Stevens, a part of them given to said Webber & Haviland, and a part to Webber, Haviland & Co. valued in all at $3850, and have this day subscribed for $10,000 of the capital stock of the Lockwood Cotton Mills.

"The said Dunn & Sons in consideration of the above, agree to pay for said Webber & Haviland the assessments on thirty-eight and a half shares of said stock subscription up to its par value, when and as fast as said stock shall be assessed.

"It is further agreed that for what further subscriptions to the stock of said cotton mills, said Webber & Haviland may make in their own names or obtain and guarantee in the names of others, not exceeding twenty thousand dollars, in addition to the aforesaid ten thousand dollars, said Dunn & Sons shall pay them as commission at the rate of five dollars for each and every hundred dollars further as aforesaid subscribed and paid in.

"And for all further subscriptions said Webber & Haviland may make or cause to be made beyond the said further sum of twenty thousand dollars, said Dunn & Sons shall pay them as commission at the rate of two dollars for each and every hundred dollars further as aforesaid subscribed and paid in.

R. B. DUNN & SONS."

The plaintiffs at that time subscribed for $10,000, and proceeded under said agreement to procure other subscriptions on one of the books delivered them by the defendants for that purpose, and prior to February 9, 1875, had procured $27,100 besides their own subscription.

February 9, 1875, the requisite number of 4000 shares not having been subscribed for, the directors voted that the books be closed, and that the subscribers be released from all liability upon their subscriptions, and then voted that new books be opened for subscriptions to the capital stock "for purchasing the real estate of the Ticonic Company for the purpose of this company, and for erecting and operating a cotton mill, provided that no assessment shall be laid until 6000 shares shall have been subscribed for."

The plaintiffs then subscribed $10,000 on one of the new books, and one of the defendants delivered to one of the plaintiffs one of the new books, requesting him to get the subscriptions which the plaintiffs had procured on the old book transferred to the new, and to procure other subscriptions to the stock; and the plaintiffs proceeded to do so, procuring the transfer of most of the old subscriptions, and a large amount of new ones.

On the 16th of April, 1875, the plaintiffs made and sent to the treasurer of the corporation the following guaranty :

"Waterville, April 16th, 1875.

A. D. Lockwood, Esq., treasurer of Lockwood Co., Dear Sir : When we commenced to get the stock of the Lockwood mills subscribed for we were to have the privilege of guaranteeing the payment of subscriptions to the amount of $20,000 if we chose to do so, for which we were to have an additional per centage. In accordance with such an agreement (with Mr. Dunn) we send you the following names and amounts set against their respective names that we will guarantee. These names and amounts are on the old books.          Yours truly,

WEBBER & HAVILAND."

The schedule of subscriptions annexed amounted to $16,600.

These facts were not in controversy, but the great contention between the parties, as to the facts of the case, was, whether the parties made a new contract, by parol, by virtue of which the plaintiffs made their new subscription to take the place of the old, and procured the transfer of the old subscriptions of others, and the new subscriptions which they obtained, under the terms and stipulations of the agreement of June 30, 1874.

We shall consider the questions of law raised in the order they are presented by the defendants' counsel in their argument.

1. It is contended that the requests 14, 15, 16 and 17 should have been given; and that the charge of the judge upon the question of rescission of the contract is erroneous. As to the requests it is sufficient to say that they were given in substance. The judge instructed the jury, in substance, that the new subscriptions were not within the terms of the contract of June 30, 1874, unless by virtue of a new agreement between the parties; and the rule given to the jury, as to the rescission of the contract by the parties, related to a rescission by agreement, and was based on the evidence introduced by the defendants, tending to prove that the contract was rescinded after the new agreement was made as claimed by the plaintiffs. The rule of law given to the jury upon this point was full and accurate. The burden of proof was on the defendants. When it is proved or admitted

that the contract was made as claimed by the plaintiff, and the defendant claims that it was afterwards rescinded, he takes the affirmative of the issue, and the law casts the burden upon him to prove it. In such issue the defendant does not deny that the contract was made as claimed, but he says, by a subsequent agreement between the parties, it was annulled. The subsequent agreement is set up by him and he must prove it.

2. It is objected that the rule given to the jury by the judge upon the question of the liability of the defendants to pay $3850 of the assessments on the plaintiffs' subscription is erroneous. We think the instruction upon this point is correct, and that it fully covered this part of the case. It required the jury to find affirmatively that, when the first subscription books were called in and the new books were opened, the plaintiffs' subscription of $10,000 on the first book was cancelled, and the same amount subscribed by them on the new book to take its place by agreement between the plaintiffs and the corporation, and that this was assented to by the defendants. This was all that the plaintiffs were legally required to prove to fix the defendants' liability. The defendants held the notes and mortgage for the $3850. This was a good and sufficient consideration for their undertaking. The change of the subscription from the first book to the second in no way increased their liability. It may be said that they may have had a greater interest in the first subscription than in the second, but their consent to the change is a full answer to this suggestion. The case is the same, in principle, as if A. for a good consideration, agrees to pay $500 on B.'s note to C. for $1000 in six months, and when the note matures, B. and C. agree to renew it for six months, and a new note is given for that purpose which is assented to by A. In such case there can be no doubt of A.'s liability to pay the $500 on the new note.

It is unnecessary to consider further the several objections so ingeniously urged by the defendant's counsel on this branch of the case.

3. It is next objected that the rule of law given to the jury as to the liability of the defendants for commissions is incorrect. The judge instructed the jury that the defendants were not liable

for commissions by the contract of June 30, 1874, alone; and further instructed them that, "if you find that the defendants passed to the plaintiffs the new book, requesting them to get the old subscriptions renewed upon it, and requesting them to procure further new subscriptions, with the agreement or understanding between the parties that the subscriptions were to be regarded as under this contract, then I instruct you that the plaintiffs are entitled to recover." Again, "if it was the understanding of the parties, or if the acts of the defendants were such as reasonably to induce the plaintiffs to believe that those subscriptions, so renewed, were to be within the terms of the contract, then the plaintiffs are entitled to commissions upon them according to the terms of the contract." The jury was further instructed that the burden of proof was upon the plaintiffs.

The only objection made to this part of the charge is that the last clause quoted; authorized the jury to find an express contract between the parties by estoppel. It is claimed that an express promise can never be raised by acts in the nature of estoppel. The answer is that the contract is not created by the estoppel, but the defendants by their acts are estopped from denying that the plaintiffs performed the services under the terms of the express contract which had previously been made between the parties. We see no error in this instruction.

4. If liable for commissions, the defendants claim that they are not liable for the five per cent. commission claimed by reason of the alleged guaranty by the plaintiffs, and that the judge erred in his charge upon this branch of the case. Several objections are interposed. 1. It is claimed that the guaranty by its terms does not apply to the subscriptions on the new book. We think it must be held to apply to them. The new book had been called in, and subscriptions closed by the corporation before the guaranty. The subscriptions on the schedule were all on the new books. They had ceased to be valid subscriptions on the old books. It must be held to be the intention of the parties, by the contract, to guaranty existing subscriptions, unless the terms of the guaranty are inconsistent with such construction. It is said that the recital at the bottom of the instrument, that "those names

and amounts are on the old book" excludes the construction that it was intended to apply to the new. We think not. The names and amounts were on the old books, but had been transferred to the new. The language used distinguishes the subscriptions guaranteed from the new subscriptions obtained by the plaintiffs. 2. It is claimed that there was no valid consideration for the guaranty, and that it is void for that reason. The promise by the defendants to pay the five per cent. commission was a good consideration. It was not necessary, as claimed by counsel, that the consideration should move from the corporation. 3. It is further claimed that the guaranty does not render the defendants liable because they had no notice of it. This objection, if tenable, is not open to the defendants here. It was not raised at the trial. No instruction was given in regard to it. The case was not argued by counsel, but the defendants' counsel presented twenty requests for instructions on such points as they desired to raise. None of them relates to this objection. They heard the charge and knew that the judge did not allude to it. It was their duty to call his attention to the point if they desired to raise it. It is too late for them to raise it for the first time in this court. *Eaton* v. *N. E. Tel. Co.* 68 Maine, 63.

Again, the exception is to all of the charge relating to the guaranty as a whole. It is not claimed that that part of the charge does not contain some correct legal propositions. For this reason the exception is not well taken. *Macintosh* v. *Bartlett*, 67 Maine, 130; *Harriman* v. *Sanger*, 67 Maine, 442; *Bacheller* v. *Pinkham*, 68 Maine, 253.

5. It is further claimed that if the defendants are liable for the two per cent. commission at all, they are not liable for such commission on the difference between the $16,600 guaranteed, and $20,000. This construction of the contract would give the plaintiffs no commission on the first $20,000 procured, if they guaranteed no portion of it. We do not think this is the true construction of the contract. Taking all the terms of the contract together and applying them to the subject matter of it, we think the meaning of the parties was that the plaintiffs should be entitled to five per cent. on such sum as they might guaranty, not

exceeding $20,000; and two per cent. on the sums subscribed and paid in, which they did not guaranty.

6. Exception is taken to the direction given to the jury in regard to the testimony of Webber as to certain alleged admissions and offer made by one of the defendants to him. After the witness answered, objection was made to his testimony on the ground that the admissions and offer were made during an effort to compromise. It did not then appear that such was the fact. The judge remarked in substance, that the answers might stand, but if it should appear that the offer was made during negotiations for a settlement, the evidence would be incompetent. It was the privilege of the defendants' counsel to cross examine the witness in regard to the matter at that point in the case, and if it was made to appear that the parties were trying to compromise, he could have renewed his objection. This he did not do; nor did he, at any subsequent stage of the case, renew the objection. It was not the duty of the judge to take any further action in regard to the matter without request, and no further objection being made, the defendant has no ground of exception.

The defendants introduced evidence tending to prove that when the admissions and offer were made, the parties were negotiating for a settlement; but the parties were still at issue as to the fact. In such case, the evidence having been properly admitted when given, the question of fact should be submitted to the jury, with direction not to consider the evidence if they found that the parties were trying to compromise when the admissions and offer were made. This was done.

7. "The defendants except to the rejection of evidence offered by them, . . . in the several instances mentioned in the official report."

While we think this mode of exception irregular, and ought not to be encouraged, still we will proceed and examine the alleged errors pointed out in the arguments.

R. Wesley Dunn, one of the defendants, testified that he was present when the contract of June 30, 1874, was executed. He was asked by his counsel, "Do you recollect what, if anything, was said to them by you in reference to the circumstances under

which you proposed to enter into that contract." This was objected to and excluded. The purpose for which the evidence was offered was not disclosed. There was no contention between the parties as to the due execution of the contract; nor was there any ambiguity in it which the evidence was offered to explain. It was properly excluded.

The defendants offered a deed from Ticonic W. P. Mg. Co. to Ticonic Co. of land and water power; a deed from Ticonic Co. to Lockwood Cotton Mills; also subscription book of the Ticonic Co. to show that the defendants owned all but three shares of its stock. They were objected to and excluded.

The exceptions do not show the purpose for which this evidence was offered. It certainly had no tendency to prove any direct issue involved in the case. If offered for any collateral purpose, the exceptions should show that the attention of the court was called to it; otherwise the exceptions should not be sustained. *Lee* v. *Oppenheimer*, 34 Maine, 181.

But it is claimed in argument that this evidence, taken in connection with other evidence in the case, tends to show, that it was not contemplated by the corporation, under the scheme for the first subscription for its stock, to purchase the land and water power, but to lease it only; but by the scheme for the second subscription, the land and water power were to be purchased, and that the defendants, being the principal owners of the land and power, had a greater interest in the success of the first scheme, by which they might hold the real estate for its prospective value, than in the second, by which they were to sell it; and it is claimed that the evidence was admissible for that purpose, to corroborate the testimony of R. Wesley Dunn in regard to what took place between him and the plaintiff Haviland, when he gave him the second subscription book. We think it clear that it was inadmissible for such purpose. There is no evidence in the case of the price which the defendants were to receive for the real estate, and none offered tending to show that the property had a prospective value greater than the sum for which it was to be sold. The issue attempted to be raised was collateral, speculative and intangible; and the jury would not have been

authorized to find that the property had a prospective value greater than its value at that time.

If the property was to be taken for public uses, the law would not sanction such a rule of damages; and evidence tending to show its prospective value would not be admissible. The future has too many vicissitudes and uncertainties to render it safe to set a jury speculating as to what it may develope to man or property.

The evidence offered to show what took place between R. Wesley Dunn and his father, in the absence of the plaintiffs, was properly excluded. They were both defendants, and it was not competent for them to prove what was said between them, to strengthen their evidence. They were permitted to show everything that was said or done in regard to the matter in controversy, in the presence of either plaintiff.

It is unnecessary to notice further the requests for instructions. So far as they were sound law, applicable to the case, they were given in substance. This was all the defendants were entitled to.

The motion to set aside the verdict, because it is against the evidence, must be overruled. There was evidence tending to support the theory of each side. It was conflicting. The plaintiffs had rendered the services, for which they seek compensation. The credibility of the witnesses, and the weight to be given to their evidence, were for the jury. There is not such a preponderance of evidence against the verdict as to authorize the court to disturb it.

*Exceptions and motion overruled.*

Appleton, C. J., Walton, Barrows and Virgin, JJ., concurred.