## VARNEDOE *vs.* THE STATE OF GEORGIA.

| 75 | 181 |
|---|---|
| 109 | 126 |
| 75 | 181 |
| 117 | 257 |
| 75 | 181 |
| 122 | 162 |

1. Under the circumstances in proof in this case, there was no error in characterizing the statements made by the deceased, after he had received the fatal wound, as dying declarations. The foundation was laid in the manner pointed out by the statute, and the charge on the subject was substantially in the words of the Code, §3781.

(*a.*) A *prima facie* case is all that is necessary to carry dying declarations to the jury. It is an issue of fact whether or not they were made in immediate prospect of death. This is to be passed upon by the jury; and where the evidence is contradictory as to whether or not such declarations were made with the consciousness that the declarant was *in articulo mortis*, this court will not interfere with the verdict of the jury and the refusal to grant a new trial, especially where it is satisfied that the verdict was warranted by the proof

2. Where a request to charge on the subject of the circumstances which would be sufficient to excite the fears of a reasonable man and to justify a killing was more fully and accurately set out in the general charge than in the request, the refusal of such request furnishes no ground for a new trial.

3. It is not only the privilege, but the duty, of the court to propound such questions to reluctant witnesses as will strip them of the subterfuges to which they resort to evade telling the truth.

4. The verdict was sustained by the evidence, and the charge was full, clear and impartial.

5. Where there is no evidence tending to make a case of involuntary manslaughter, a failure to charge on that subject will not cause a new trial.

February 9, 1886.

Criminal Law. Dying Declarations. Evidence. Charge of Court. Practice in Superior Court. Witness. Before Judge HAMMOND. Fulton Superior Court. April Term, 1885.

To the report contained in the decision, it is necessary to add only that the following were among the grounds of the motion for a new trial:

(1.) Because the verdict was contrary to law and evidence.

(2.) Because the court charged as follows : " In considering the case, you will have to determine whether you will give any force or effect to any dying declarations made by the deceased, Asbury Whitehead, and the court will give you the rule by which you are to determine whether you will consider those declarations. The law says that the declarations made by a person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, are admissible to go to the jury. If you believe from the evidence in this case that Asbury Whitehead was in the article of death, that he was conscious of his condition, and that, during that time, he made any statements as to the cause of his death and the person who killed him, then you would be authorized to take into consideration such declarations made by him in determining the issue in the case, giving to those declarations the same force and effect, and no more, as you would give to the statement of a witness sworn on the stand. If you believe from the evidence that any statements were made by him, by Asbury Whitehead, as to the cause of his death and the person who killed him, but at the time they were made, he was not in a dying condition or in the article of death, that is, that the statements were not made in a belief that he was dying, then you ought not to consider those statements in determining the issues in the case. The court submits to you the question as to whether or not you will consider the dying dec-

clarations, if any such were made by the deceased, in determining the issue as to whether or not this defendant is guilty of the offense charged against him in this indictment."

(3.) Because of a further charge as to dying declarations, similar to that just above.

(4.) Because the court failed to charge the law of involuntary manslaughter.

(5.) Because the court refused to charge, "That when the circumstances of the killing are such as to have excited the fears of defendant (if he was a reasonable man), in the absence of all other proof to the contrary, the law will attribute the killing to those fears, and not to revenge or passion. That dying declarations are evidence, when it satisfies the jurors that they were made by deceased *in articulo mortis*, with a consciousness of his condition, namely, that he could not recover, and the jurors are to determine for themselves if the declarations were made under the rules of law above given; and that, if there is no other evidence against the defendant as to the killing than the dying declarations, before he could be convicted upon that alone, the jury must be satisfied, beyond all reasonable doubt, that the declarations were made under the rules of law above referred to.

(6.) Because the jury found against the charge, that when a defendant acted under the fears of a reasonable man, and the circumstances were calculated to excite the fears of a reasonable man, the jury can consider any previous threats of violence communicated to defendant, any violent attack on defendant by deceased at the time of the killing, any weapon deceased may have had at the time, and the physical disparity of defendant.

(7.) Because the court propounded the following questions to state's witness, Ward: " Have you ever talked with Cal. Varnedoe about this case ?" " With his father ?" " Have you told all you know about this case to the jury ?" " Describe again all that you saw and who you saw on that

occasion." "Do. you mean the one who struck him, or the other man ?"

[These questions were asked by the court upon the conclusion of the direct examination and the statement by counsel for the defendant that they had no questions to ask.]

(8.) Abandoned.

(9.) Because the court admitted the statements offered as dying declarations.

The motion was overruled, and the defendant excepted.

S. B. SPENCER; W. A. WAY, for plaintiff in error.

C. D. HILL, solicitor general, for the state.

HALL, Justice.

The defendant was tried for the murder of Asbury Whitehead, and upon being convicted of voluntary manslaughter, moved for a new trial, upon nine different grounds, which, after argument and consideration, was refused.

The first ground is that the verdict was contrary to law and evidence. The second, third and ninth grounds except to instructions given by the court and its rulings upon dying declarations. The fourth alleges error in failing to charge as to involuntary manslaughter. The fifth complains that the court refused to give in charge a mixed request in writing in relation to the circumstances which were sufficient to excite the fears of a reasonable man and to justify the killing, and also in relation to dying declarations; while the sixth alleges that the jury found contrary to the charge upon the subject of circumstances sufficient to excite the fears of a reasonable man, etc. The seventh takes exception to the examination of a witness by the court. The eighth ground was wholly unfounded, and properly abandoned on the hearing before this court.

1. There was no error in characterizing, under the circumstances in proof, the statements made by the deceased, after he had received the fatal wound, as "dying declarations."

The foundation was laid in the manner pointed out by the statute, and the charge given on the subject was substantially, if not literally, in the words of section 3781 of the Code. The course pursued on this occasion was in strict accordance with the rulings of this court; a *prima facie* case is all that is necessary to carry such declarations to the jury; it being an issue of fact whether or not they were made in immediate prospect of death, it should be passed on by them; and where the evidence is contradictory as to whether or not such declarations were made with the consciousness that the declarant was *in articulo mortis*, this court will not interfere with the verdict of the jury, and the refusal to grant a new trial, especially where it is satisfied that the verdict was warranted by the proof. *Campbell's* case, 11 *Ga.*, 353, 354, 376, 377. The subject is fully discussed, and the authorities collated and reviewed in *Mitchell's* case, 71 *Ga.*, 128 (h. n. 2 b.), 141 *et seq.*

2. The next ground calling for notice is that which complains of the refusal of the court to charge as requested in writing. The latter part of this request has been disposed of in what has been said in regard to dying declarations; the first is fully met and covered by the charge contained in the succeeding or sixth ground of the motion, which defendant insists was a correct exposition of the law, but which he alleges was disregarded by the jury in their finding, and which we are likewise satisfied lays down the rule as to the circumstances that should be considered sufficient to excite the fears of a reasonable man and to justify the killing much more accurately and appropriately than did the written request of the defendant. Code, §4321 and citations; Hopkins's Pen. L., §926 *et seq.* Without reference to the other defects which this request suggests, and which. render the court's refusal to give it proper, and which need be more specifically pointed out, it is enough to say that it was fully covered by the general charge, and that lays down the law with as much leniency as the defendant was entitled to.

3. In reference to the questioning of a witness by the court, we have to remark that, while it is the privilege of counsel, it is the duty of the court to propound such questions to reluctant witnesses (as the one in question had shown himself to be) as will strip them of the subterfuges to which they resort to evade telling the truth. *Kelly's* case, 19 *Ga.*, 425, 426. The rule was still more broadly laid down in *McGinnis's* case, 31 *Ga.*, 261, 262, where it was held that it was not wrong for the presiding judge himself to interrogate the witnesses; that it was not only his privilege to do this, but his duty likewise, whenever he desired to ascertain a fact with a view to the correct administration of the law. In *Epps's* case, 19 *Ga.*, 102, 118, 119, it is said, " We know of no limit to the right which belongs to the court of interrogating witnesses, either in civil or criminal cases, particularly the latter. The life or death of a man may hang upon a full development of the truth. The presumption that this liberty will not be honorably and impartially exercised is not to be tolerated for a single moment. Counsel, in their zeal to acquit their clients, seem to take it for granted that the only object of courts is to convict. Until called upon to discharge the solemn and responsible functions of a judge, they never can appreciate the high sense of ob'igation under which they act to God and their fellow citizens. 'Thy life for the murderer's life, if he escape,' is the solemn denunciation of the Almighty! When they see, therefore, that a material fact has been omitted, which ought to be brought out, it is not only the right, but the duty, of the presiding judge to call the attention of the witness to it, whether it makes for or against the prosecution, his aim being neither to punish the innocent nor screen the guilty, but to administer the law correctly. And let it be remembered that counsel seek only for their client's success, but the judge must watch that justice triumphs."

It is impossible to examine this record without being impressed with the evident reluctance of the witnesses, on

whom the state had necessarily to rely, to testify in its behalf; indeed, this was so apparent that the judge, in several instances, felt bound, in the exercise of that discretion with which he is invested, to allow the counsel for the prosecution to wring from them the truth by propounding leading questions, and in the particular instance, where he took the witness in hand, it was quite apparent that the witness held back and sought to keep out of the way, and during his examination did not readily and fully respond to the questions asked him. The judge, by his examination, sought to ascertain the cause of his unseemly reticence. Had he gone further, and reproved him for his indecorous conduct, he would not have transcended the limits of his duty. *Thomas's* case, 27 *Ga.*, 288, 297.

4. But with all this marked indisposition to testify, which could not have escaped the notice of ordinarily attentive jurors, there was enough in their evidence, taken in connection with facts deposed to by less unwilling witnesses, and others revealed by the prisoner in his statement, to justify, if not to require, the verdict.

It seems from defendant's statement that he was afraid of deceased, that before the fatal difficulty, deceased had threatened him; others told him what he had said, and Mr. Faith had said, " You watch him, or he will hurt you." But a short time before the fracas, he had a knife whetted, which was turned over to Mr. Faith. It was somewhat singular that he was not offered as a witness, and that no reason was given for failing so to do. The defendant was seen, but a few hours before the meeting, with a knife in his hand, which appeared to be concealed by putting the blade up his sleeve. He and his friend, Perry Martin, met the deceased, treated him to liquor, and had him to sing for them; this was repeated several times; deceased knew before giving him this strong drink that there was no good feeling between them; instead of detaining him and making him drunk, or at least exciting him with liquor, it was his obvious duty, if he would have avoided trouble, to pass on

and leave him; the result was a fight between them, in which deceased appears to have been the assailant; being the stouter and heavier of the two, he knocked defendant down and got on him; defendant states that the deceased attempted to cut, when he wrenched the knife from his hand and inflicted five wounds upon him. When the defendant was searched, a knife, it seems, with blood stains upon its blade, was found on his person. Had this knife belonged to deceased, this fact might have been shown; and it is somewhat significant, to say the least, that no effort was made to account for it. No one could say that deceased had a knife during the fight; none was found upon his person, and none was found at the place of the struggle, and no effort was made to ascertain whether one was there; the knife disappears, unless, as the jury was authorized to conclude, it was in the defendant's pocket, with blood stains upon its blade. There is a singular absence of all effort, or even an attempt, to explain these matters, so important to the defendant's vindication; like everything else connected with this deplorable transaction, this is met with a general denial; the effort seems to have been to shroud it in mystery, rather than to let in the light of truth upon it. The dying man charged that defendant was the perpetrator of the homicide, and that he was aided and abetted therein by Perry Martin. Although such declarations are not entitled to the fullest credit, yet they furnish evidence on which a jury may act, and when corroborated, more or less weight is attached to them, according to the extent of the corroboration. The least that can be said was that there was evidence to sustain this finding. The judge who tried the cause, and who saw and heard all that occurred on the trial, was satisfied with the verdict of the jury; there is nothing to show that he abused his discretion in refusing to disturb it, and without this, we cannot interpose. No error is shown in the instructions given the jury. The charge was full and explicit upon every contested point; was clear and impartial, and no

complaint is made as to any of its parts. If there be error in it, that error has not been made apparent.

5. It only remains to add that nothing like a case of involuntary manslaughter appears from the proofs, and had the judge presented such an issue to be passed upon by the jury, he would have been compelled to go out of the evidence to find it; this he had no right to do, and under the facts, he was right in not alluding to it.

Judgment affirmed.