ANDERSON *v.* THE STATE.

1. In the trial of one accused of murder, evidence of declarations of the deceased as to the cause of his death and the person who killed him should be submitted to the jury, with proper instructions, when the preliminary evidence shows prima facie that these declarations were made when the deceased was in articulo mortis and conscious of his condition.

2. There is no merit in an assignment of error to the effect that a certain charge, correct in itself, is erroneous because the court failed to charge some other proposition of law applicable to the case.

3. In instructing the jury as to the law of self-defense, in a case of homicide, there is no error, though the accused be a woman, in charging that, in order to justify the killing, it must appear that the circumstances were sufficient to excite the fears of a reasonable man, of one reasonably courageous and reasonably self-possessed, and not of a coward ; the word " man " being used in its generic sense.

4. In the absence of a request to charge, a new trial will not be granted because of the failure of the trial judge to instruct the jury fully as to the law applicable to the impeachment of witnesses.

Argued February 16, — Decided March 12, 1903.

Indictment for murder.  Before Judge Dart.  Ware superior court.  December 16, 1902.

To the facts stated in the opinion it is sufficient to add the following :  The indictment was for killing John Nettles.  From the evidence it appeared that he was shot by the accused in June, and that in the ensuing October he died of the wounds thus inflicted.

One of the grounds of the motion for a new trial was that a witness was allowed to testify to certain declarations of the deceased in regard to the shooting, over the objection that the declarant did not realize at the time they were made that he was in a dying condition.   That part of the testimony of this witness which preceded his statement as to these declarations was as follows: "I saw John Nettles before he died.   The last time I saw him it was about two days before he died.   He was conscious when I saw him, and was conscious of his condition.   He said that in his condition he could not stay here much longer."   On cross-examination the witness testified : " I said that he died two or three days after he·made these statements to me.   I was there on Monday at twelve o'clock; and he died on Wednesday between nine and ten o'clock, I have been told.·  When the deceased was telling me this, I do not know whether he thought he was going to die that minute or not.   I do not know what he thought.   I do not know whether he thought he had any chance to get better or not.   The deceased said that if he did not get better he could not stay here much longer."

*Simon W. Hitch* and *John T. Myers,* for plaintiff in error.

*John W. Bennett, solicitor-general,* and *J. Walter Bennett,* contra.

SIMMONS, C. J.   Under an indictment for murder, Kizzie Anderson was found guilty of voluntary manslaughter.   She moved for a new trial.   The judge overruled the motion, and the movant excepted.

1. Evidence of certain declarations, made by the deceased while he was in articulo mortis, was admitted over the objection of the accused.   The objection was that it did not appear that the accused realized at the time that he was in a dying condition.   "Dying declarations, made by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, are admissible in evidence in a prosecution for the homicide."   Penal Code, §1000.   The evidence introduced in the preliminary examination to determine the admissibility of the declarations in this case was sufficient to show, at least prima facie, that the deceased was, at the time they were made, conscious of his condition.   It was, therefore, not erroneous to allow them to go to the jury, the court instructing the jury in his charge

that the declarations should be disregarded unless the jury determined that the deceased was in a dying condition and conscious of his approaching death. See *Varnedoe* v. *State*, 75 *Ga.* 181; *Walton* v. *State*, 79 *Ga.* 447. Complaint was also made in the motion for a new trial that the court erred in charging on the subject of dying declarations, in that the charge left the jury free to consider such declarations as evidence for all purposes, when by law they should be considered only in investigating the cause of the death of the deceased and who killed him. We think the charge is not subject to this criticism. After the court had quoted the code section above set out, and had explained that the court's admission in evidence of the dying declaration was upon a prima facie showing, the charge continued as follows: "It is now for you to determine, first, whether the evidence sufficiently showed that he was conscious of his approaching death, and that his death was really approaching, to authorize the admission of said declaration; and if not, you should disregard the dying declaration altogether; but if you think such evidence was sufficient for the introduction of such declaration, under the rules as I have given you, you should then consider such declaration as evidence in the case, together with the other evidence." When taken in connection with the language of the code section which had just been quoted by the court, this charge could not have been understood by the jury as leaving them free to make any use of the dying declarations except such as was authorized by that section.

2. One of the grounds of the motion for new trial complained that the court erred in giving to the jury a certain charge therein set out as to the law of manslaughter, "the objection to the above charge being that the court should have charged further" that under certain circumstances the killing would have been justifiable. The charge set out as to manslaughter was not attacked as incorrect in itself, and the only error assigned on it was that the court failed to give certain instructions as to the law of justifiable homicide. That such an assignment of error is without merit has been repeatedly held by this court. See *Roberts* v. *State*, 114 *Ga.* 450, and cases cited.

3. Another ground of the motion assigned error on the following charge of the court, given in connection with other instructions as to reasonable fears: "The fears must be those of a rea-

sonable man, one reasonably courageous and reasonably self-possessed, and not those of a coward." The error assigned was that this charge required a greater degree of courage and self-possession than is required of a woman under the law. This charge used the word "man" in its generic sense, the sense in which it is used in the Penal Code, § 71. That section is as follows: "A bare fear of any of those offenses, to prevent which the homicide is alleged to have been committed, shall not be sufficient to justify the killing. It must appear that the circumstances were sufficient to excite the fears of a reasonable man, and that the party killing acted under the influence of those fears, and not in a spirit of revenge." That the court used the term "man" in its broader sense more clearly appears when the court's charge is further examined; for a subsequent portion of it contains the following: "You must examine into the case and say whether or not the circumstances surrounding the case, at the time it is alleged the defendant shot the deceased, were sufficient to excite the fears of a reasonable person. . . See whether or not the circumstances were, at that time, sufficient to arouse the fears of a reasonable person." Courage and self-possession are mental attributes or qualities possessed in different degrees by different persons. The law, in cases of homicide, does not take into account the actual fears of the slayer, but considers all the circumstances, with reference to a determination as to whether they were sufficient to excite the fears of a reasonable person. Among the circumstances to be considered are the sex, strength, size, and position of the slayer. The rule of law given in charge by the court is correct and applicable to a case where the accused is a woman, as well as where the accused is a man. If the accused had in this case desired special attention to be called to her sex as a circumstance to be considered in determining whether the circumstances were sufficient to excite the fears of a reasonable person, a proper request should have been made.

4. The remaining grounds of the motion complained of the failure of the court to charge with sufficient fullness the law applicable to the impeachment of witnesses. The court did instruct the jury as to the different methods by which witnesses might be impeached, and no complaint was made of the instructions given. If more specific instructions were desired, a proper request therefor should have been made. Indeed, in the absence of a proper

request to charge, a new trial would not be granted had the court failed wholly to instruct the jury as to the law applicable to the impeachment of witnesses.　*Boynton* v. *State*, 115 *Ga.* 85.

Judgment affirmed.　By five Justices.