## PHŒNIX ASSUR. CO., LIMITED, OF LONDON, ENGLAND, v. DAVIS.

### No. 7095.

Circuit Court of Appeals, Fifth Circuit.

Dec. 8, 1933.

T. M. West and Nat L. Hardy, both of San Antonio, Tex., for appellant.

Theo. F. Weiss, of San Antonio, Tex., for appellee.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

Davis had a policy for $5,500 on his household goods with Phœnix Assurance Company, Limited. A fire totally destroyed part of the insured goods and injured others, causing a loss which he claimed exceeded the amount of the policy. Deen, as adjuster for the company, had Davis make an inventory and with him inspected the damaged goods and after reflection set down a loss figure for each item. These figures aggregated according to a memorandum of them made at the time by Davis $3,617.74, less salvage $236.-65, net $3,381.09. Deen testified the total was $3,574.24. Davis refused to accept settlement at these figures and an appraisal under a provision of the policy was made, each party selecting an appraiser and they selecting an umpire. Each appraiser had a copy of the inventory and itemized loss claim of Davis and the appraiser chosen by Davis had also the loss figures made by the adjuster. The appraisers fixed the loss at $2,177.-69, after many differences between them and after the appraiser chosen by Davis had for a day refused to go on with the appraisal because as he testified the values fixed were so inadequate. Davis refused to be bound by the appraisal and sued on the policy. The company pleaded the appraisal and tendered the $2,177.69 awarded. By supplemental pleading Davis attacked the appraisal on the grounds that the appraiser chosen by the company and the umpire were not disinterested but were biased, that there was no effort by them to ascertain the truth, and that they refused to consider estimates and bids for repairs and intentionally allowed values much less than the cash value of the property destroyed and the cost of repair and replacement; so that the award was grossly inadequate and the result of bias, mistake, and fraud, and he prayed that it be set aside. Without objection all the issues were submitted to a jury. They found for the plaintiff $5,450 with interest. The only questions

for decision are whether the evidence authorized a submission of the question of the invalidity of the appraisal, and whether the figures made by the adjuster should have been submitted to the consideration of the jury.

■■■ Testifying for the company, its appraiser and the umpire made a case of conscientious appraisement, denying that they refused to consider any evidence brought to their attention. They at first denied having the adjuster's figures, but on recall at the conclusion of the trial admitted that the other appraiser had them and that they paid no attention to them. The appraiser of Davis testified that while the others were experienced in such matters, he himself was not, that decisions were generally against him, that he continually protested that they were finding much less than the adjuster had fixed as right, and that at the end of the first day he quit in disgust. On the third day he was persuaded to finish by the company's appraiser and by an outsider who was brought by him, and he signed the appraisal only because he thought it so unfair as not to amount to anything. Davis testified before the jury to values and losses far above the face of his policy, and introduced many witnesses to the value of and damage to the various sorts of his goods who tended to corroborate him. The figures originally made by the adjuster were in evidence showing a loss about $1,577 more than the appraisal; that is about 70 per cent. above it. Some of the goods were old and Davis' cost prices were of course to be depreciated accordingly, but the main dispute was over the extent of the damage to things not destroyed. For instance, beside a dictionary and atlas wholly consumed, Davis claimed about $2,000 worth of books, and testified that some were badly scorched, others smoked and steamed so as to require rebinding. The binders testified that to repair those needing it would cost $622. The adjuster figured $222. The appraisers allowed on books $55. A few days after the appraisal Davis sold the damaged property except his books, piano, gas range, and clothing, for $240; that being the best of six bids. Without going into details, we hold the evidence enough to carry the attack on the appraisal to the jury. The agreement to appraise and abide by the appraisal is a binding one and the result ought generally to end dispute. But the agreement in the policy was to submit the matter to "competent and disinterested appraisers," which, as stated by the Supreme Court of Texas in Delaware U. & W. Ins. Co. v. Brock, 109 Tex. 425, 429,

211 S. W. 779, excludes not merely pecuniary interest but also bias and prejudice, and is designed to secure a tribunal acting in a quasi judicial capacity free from partisanship and seeking to do equal justice between the parties. Fraud, misconduct, carelessness, or partiality which results in and is evidenced by an award grossly below the actual loss will justify the setting aside of the award. St. Paul Fire & Marine Ins. Co. v. Tire Clearing House (C. C. A.) 58 F.(2d) 610; Harrington v. Agricultural Ins. Co., 179 Minn. 510, 229 N. W. 792, 68 A. L. R. 1340; 5 C. J. § 485. The jury were carefully and accurately instructed upon the finality of the award and the grounds upon which it might be set aside. As shown by the final verdict they considered it inadequate by more than 150 per cent. This fact, in connection with the other direct and circumstantial evidence tending to show partiality to the insurer, might justify a disregard of the appraisal. Pennsylvania Fire Ins. Co. v. Waggoner (Tex. Com. App.) 39 S.W.(2d) 593; Security Ins. Co. v. Kelly (Tex. Civ. App.) 196 S. W. 874.

■■■ Important evidence was the original estimate of loss made by the adjuster. His admissions, if admissions they were, though below the values fixed by the jury, were much higher than the appraisal. The judge admitted the figures over the objection that they were parts of an offer of compromise, and charged the jury that if they believed they were made as the adjuster's appraisal and estimate of the loss and damage, representing his opinion after investigation, they might weigh this evidence along with the other evidence in deciding whether the award was so grossly inadequate as to show bias, prejudice, mistake, or fraud; but if they found they were an offer in compromise and fixed for the purpose of disposing of a controversy, the evidence was not to be considered for any purpose, offers made in compromise not being admissible. It is ordinarily the duty of the judge to rule upon the admissibility of evidence, that being a question of law. When the decision involves a preliminary question of fact, as whether a confession in a criminal case was freely and voluntarily made, or whether an alleged dying declaration was made in articulo mortis by one conscious of his condition, the judge passes on it. But if the evidence on such a preliminary question is in conflict, it may be referred to the jury with proper instructions. Wilson v. United States, 162 U. S. at page 624, 16 S. Ct. 895, 40 L. Ed. 1090;

Dawson v. State, 59 Ga. 334; Irby v. State, 95 Ga. 467, 20 S. E. 218; Varnedoe v. State, 75 Ga. 181, 58 Am. Rep. 465; Anderson v. State, 117 Ga. 255, 43 S. E. 835. In like manner in a civil case when there is serious dispute whether a fact was admitted because it was true or whether it was a concession to buy peace, that is, an attempt at compromise, the question may be submitted to the jury with instructions to disregard it if the latter. Chamberlayne on Evidence, § 1454; Donley v. Bailey, 48 Colo. 373, 110 P. 65; 22 C. J. § 351; Webber v. Dunn, 71 Me. 331; Prussel v. Knowles, 4 How. (Miss.) 90; Hall v. Brown, 58 N. H. 93; Colburn v. Groton, 66 N. H. 151, 28 A. 95, 22 L. R. A. 763. By the weight of authority even though a compromise be on foot and the offer of compromise be itself not evidence, yet an admission in that connection of a fact separate from the offer may be received. Wigmore on Evidence (1923) § 1061; International & G. N. R. R. Co. v. Ragsdale, 67 Tex. 24, 2 S. W. 515; Sanford v. John Finnigan Co. (Tex. Civ. App.) 169 S. W. 624. Davis testified that the figures were called off by the adjuster as his estimate of the loss and damage as he saw it. The adjuster described his arrival with full power to speak for the company and his having Davis to make an itemized inventory, and said: "After I had gone over the house completely and looked at everything and made up my mind as to what the damage was on each article Mr. Davis and I sat down and discussed the value of each article. * * * After I had thought about the value and considered Mr. Davis' estimate I fixed a value upon that stuff myself. * * * I went to Mr. Davis' house and told him what in my opinion the value of each of these items was." Thus far the adjuster, like Davis, had made a plain case of an admission of the values, the figures representing his true opinion thereof. Thereupon in answer to a question by the court he testified that the figures were made on a compromise basis. In answer to questions by the company's counsel he said he stated his values to Davis in a spirit of compromise, attempted to compromise with him. But on recross he again said: "Yes, sir, I stated a minute ago that I estimated the amount of loss out at Mr. Davis' home. I have a list of my estimates." He was recalled to the stand later and testified flatly that he offered these figures to Davis in compromise and settlement of his claim, but on further questioning said: "Yes sir, I made the estimate or appraisal called for in the policy. This list, Exhibit C, is similar to the one Mr. Davis wrote down as I called off the figures which represented my estimate of the loss." It is to be noted that the adjuster never testified to a true opinion different from his figures. The policy provided for an "ascertainment or estimate to be made by the insured and the Company, or if they differ, then by appraisers as hereinafter provided." The judge was well warranted in leaving it to the jury to say whether the figures were the true opinion of the company's representative in making the ascertainment and estimate required by the policy, or were an offer to buy peace.

Judgment affirmed.