### 45077. FRANCIS v. THE STATE.

ARGUED FEBRUARY 3, 1970—DECIDED FEBRUARY 24, 1970.

*George N. Skene,* for appellant.

*Jack J. Gautier, District Attorney, Whitney T. Evans, Jr.,* for appellee.

EBERHARDT, Judge. ■ There is evidence in the record which would have authorized the jury to conclude that the shooting of the deceased was accidental, but there is impeaching evidence as to the witnesses who related a version of accident, and other evidence which would authorize the verdict of voluntary manslaughter. The general grounds of the motion for new trial are without merit.

■ Error is enumerated upon the admission, as a dying declaration of the decedent, of testimony by his father as to a statement made by the deceased while in the intensive-care unit of the hospital approximately twenty-four hours before his death to the effect that he and his wife had been sitting in their upstairs apartment playing cards when they heard some commotion in the hall downstairs and he went down to see what it was about. Upon arrival in the downstairs hall he saw the defendant with his gun, and when the deceased asked the defendant what the trouble was the defendant replied that he was going to kill his ex-wife. The deceased thereupon said to the defendant, "Buddy, you are going to get into some bad trouble if you don't behave," and then the defendant pushed the deceased back against the wall and shot him.

This story of the incident was admitted as a dying declaration over objection that the foundation laid for it had been insufficient to justify its admission.

As foundation and prior to eliciting the testimony, the witness testified that he went to the hospital on Saturday to visit his son, who had been in intensive care since admission to the hospital, and that he saw and talked with him for about five minutes around 7 p.m. The son told his father that he "liked to have died" that morning, and that he was not going to make it," that he was "in bad shape," was not going to "pull

through—would never go home again," and asked the father "look after my wife and kids and don't let anybody run over them." After that, decedent related the version of the defendant's shooting him as is set out above, with the additional statement that "when I get out I am going to take out a warrant" for the defendant.

Dr. Campbell, who performed an autopsy on the deceased, testified that the deceased's course in the hospital from admission on November 28 to the time of his death on December 15 had been "stormy." He was in the intensive-care unit the whole period as a result of a gunshot wound. The autopsy revealed that the abdominal viscera were matted together with adhesions, there were large areas of hemorrhage behind the liver and stomach, with considerable necrosis or death of the liver tissue around the path of the bullet (the liver and pancreas were shot through), and there were multiple severances of arteries. He had been shot through the left hand, the bullet entering the body near the hip joint and traveling through the abdomen to the tenth rib on the right side, and death finally resulted from the gunshot wound.

Asked what the condition of the deceased had been 24 hours prior to death the doctor replied that he could not be sure, because he was not there, but "he was a very sick man and I can say that definitely. . . This man knew he was sick and probably knew that he was going to die before he died. . . He had been in this condition for some two weeks before he died— he had been in a gradual fading out condition."

"Declarations by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, shall be admissible in evidence in a prosecution for the homicide." *Code* § 38-307. A prima facie showing that the deceased was, at the time of making the declaration, in a dying condition and that he was conscious of his condition, is sufficient for admission of the evidence. It is then for the jury to determine whether the declarant was in a dying condition and whether he realized his condition at the time of making the statement. *Anderson v. State,* 117 Ga. 255 (1) (43 SE 835). This may be shown by the nature of the wound and other

circumstances, as well as from the declaration itself. *Emmett v. State,* 195 Ga. 517, 532 (25 SE2d 9). That the deceased may have indicated a purpose to take out a warrant for the defendant did not necessarily rebut other statements which he made indicating that he did not think he could live, and this is particularly true in the light of the testimony of the physician who made an autopsy as to the nature and seriousness of the wound, and the fact that he died approximately twenty-four hours after making the statement. *Parker v. State,* 197 Ga. 340, 349 (29 SE2d 61). A prima facie case was made and the evidence was properly admitted.

There is exception to the failure of the court to charge that the declaration was admitted for the *sole* purpose of declaring the cause of death. This exception is without merit. The Code section itself provides that the evidence is admissible both as to the cause of death and as to who did the killing.

*Judgment affirmed. Jordan, P. J., and Pannell, J., concur.*