# CHARLESTON AND WESTERN CAROLINA RAILWAY COMPANY *v.* BURCKHALTER.

1. In a suit by a widow against a railway company for the homicide of her husband, there was evidence tending to show the following facts: The husband of the plaintiff, who was an employee of the defendant, while engaged in making up a train on a track adjacent to a platform, was so badly injured by the cars that he died the next day. He was

crushed and thrown under the edge of the platform. He called for help, and another employee near by went to his assistance. He asked that a doctor be sent for quickly. A telephone message was sent to a doctor, who was a short distance away, and who arrived at the scene of the injury within three or four minutes after being called. After the plaintiff's husband had been found, another employee came up, the cars were uncoupled, and the injured man was removed and placed upon the platform. This required only a few minutes. Before the removal had been completed, the doctor arrived. He kneeled beside the wounded man, who was groaning terribly, and called his name. The latter said: "They caught me and rolled me between the cars without my flagging." This was said in a short, catchy, jerky manner, and in a weak voice; and in the intervals between his words the wounded man was spitting blood, and seemed to be in great pain. *Held*, that such a statement was admissible as a part of the res gestæ.

2. The verdict was supported by the evidence, and there was no error in overruling the motion for a new trial.

DECEMBER 12, 1913.

Action for damages. Before Judge Hammond. Richmond superior court. October 21, 1912.

Mrs. Janie E. Burckhalter brought suit against the Charleston & Western Carolina Railway Company, to recover for the homicide of her husband. There was evidence tending to show the following among other facts: The husband of the plaintiff was a foreman in the employment of the defendant, and was killed while engaged in making up his train. There was no eye-witness who testified to the exact manner in which the injury occurred. He was heard calling for help, and when another employee of the defendant, who was engaged near by, responded to the call, he found the decedent lying on the ground under the edge of the platform, badly injured. In a few minutes a switchman arrived and uncoupled the cars which were standing on the adjacent track, and the injured man was picked up and carried on to the platform. He said: "Get Horne or Will quick." One of those present telephoned for Dr. Horne, the person mentioned, and he arrived in a few minutes. The employee who first reached the injured man testified that they were not more than six or seven minutes in getting him from under the platform. He also stated that from the time he first reached the decedent until the cars were uncoupled was not, in his opinion, over five minutes, because the switchman came almost immediately, and they told him to get the cars uncoupled; and that from the time they first reached the decedent until he was removed in an "invalid's carriage" was between thirty and forty-five minutes.

The doctor testified as follows: "I was at my office. I had two sisters sick with typhoid fever, and was fixing to go to see them. My automobile was at the sidewalk, turned around, and ready to go. As I started out of my office, the telephone rang. I said, 'Who is that?' He says, 'This is Moody, at the C. & W. C. Road. Burckhalter has been seriously injured. Come at once.' In three or four minutes I was around there. I got to the foot of Campbell street before they got him up on the platform from under the platform. Several men were bringing him up, and he was groaning terribly. I had to get down on my knees to examine him. I says, 'Buck.' He says, 'They caught me and rolled me between the cars, without my flagging,'—in a short, catchy, jerky manner and in a weak voice; and between those sentences of speech he was coughing and spitting blood, and seemed to be in great pain. I punctured him to relieve him, and telephoned for Elliott's 'invalid's carriage.' He died the next day. The cause of his death was that his liver was punctured, ribs broken, and lung perforated. He died from hemorrhage." At another time in his testimony he said that the decedent "told me he was injured by being rolled between the car and the platform." The other evidence need not be set out. The jury found for the plaintiff $5,000. The defendant moved for a new trial, on the grounds that the admission of the statements of the decedent as part of the res gestæ was error, and that the verdict was contrary to law and evidence. The motion was overruled, and the defendant excepted.

*W. K. Miller* and *Boykin Wright,* for plaintiff in error.

*C. H. & R. S. Cohen,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. One ground of the motion for a new trial assigned error on the admission of evidence as to statements made by the decedent in regard to the manner in which he was injured. They were admitted as part of the res gestæ. The difficulty, if not impossibility, of formulating a definition of the term "res gestæ" which will serve for all cases has been so frequently declared, that a repetition of the statement and a demonstration of it by reference to numerous cases is unnecessary. See *Walker* v. *State,* 137 *Ga.* 398, 401 (73 S. E. 368); 3 Wigmore on Ev. §§ 1745 et seq. Without undertaking to compare or contrast the different cases, it is sufficient for the present purposes to decide whether the evidence to which

objection was made in the instant case was properly admitted as a part of the res gestæ.

It is declared in the Civil Code (1910), § 5766, that "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, are admissible in evidence as part of the res gestæ." Here the plaintiff's husband was crushed so that he died next day from the injury. He was thrown under the edge of a platform beside a railroad track. He called for help. Another employee of the railroad company near by went to his assistance. He asked that a doctor be called quickly. This was done by telephone message, and the doctor, who was only a short distance away, arrived within three or four minutes after being called. In a few minutes after he was found, the train was uncoupled, and those who had gathered moved him on to the platform. The doctor arrived before the removal had been completed. As soon as he called the name of the injured man, the latter said, "They caught me and rolled me between the cars, without my flagging." He spoke in a short, catchy, jerky manner, and in a weak voice. Between his utterances he was coughing and spitting blood, and seemed to be in great pain. He died next day. Here we have a shock sufficiently startling to produce nervous excitement on the part of the injured man and to render his utterances spontaneous and unreflecting, and they were apparently made before there had been time to contrive and misrepresent, so as to be free from all suspicion of device or afterthought. They related to the circumstances of the occurrence. There may have been some differences in the estimates of time made by various witnesses. But there was enough to authorize the admission in evidence of the statement so made by the injured person. *Southern Railway Co. v. Brown,* 126 *Ga.* 1, 2-3 (54 S. E. 911).

2. Without discussing the evidence at length, a careful consideration of it satisfies us that it was sufficient to support the verdict.

*Judgment affirmed. All the Justices concur.*