### DECIDED IN THE

# SUPREME COURT OF GEORGIA

| 126 | 1 |
|-----|-----|
| f127 | 480 |
| 127 | 634 |

### AT THE

## MARCH TERM 1906.

---

## SOUTHERN RAILWAY COMPANY *v.* BROWN.

1. A marriage may be proved by the testimony of one of the parties thereto.
2. There was no error in admitting the evidence offered as constituting part of the res gestæ.
3. The presence in the jury-box of a person not a member of the jury, and of such person in the jury-room when they are retired during the argument of a motion for a nonsuit, is not a ground for a mistrial, when it affirmatively appears by the evidence of this person that his presence with the jury was due to a mistake on his part, and that no communication passed between him and any member of the jury.
4. When an improper argument is made by counsel, and the same is objected to by counsel for the opposite party and the objection is sustained, and such argument is stopped, the failure of the court of its own motion to instruct the jury to disregard the improper argument, or to reprimand counsel, or to declare a mistrial, is not generally a sufficient reason for setting aside the verdict, when no request for such instructions or for a reprimand is made, and there is no motion for a mistrial.
5. Whether statements claimed to be a part of the res gestæ are really such is a question of law to be determined by the court. Even if the question whether statements are a part of the res gestæ can in any case ever become a mixed question of law and fact to be submitted to the jury, the statements in the present case were not of a character to require their submission to the jury.
6. Under the charge of the court when considered as a whole, it was impossible for the jury to have received the impression that there could be a recovery if the homicide of the plaintiff's husband was the result of an accident; and if more elaborate instructions on this subject were desired, they should have been made the subject of an appropriate and timely written request.
7. The charge of the judge was brief but pointed. It covered the substantial issues in the case. When the instructions upon which errors

1

are assigned are read in connection with the entire charge, they are free from any error calculated to prejudice the losing party. The evidence authorized the verdict, and no sufficient reason appears for reversing the judgment.

Submitted March 3,—Decided July 27, 1906.

Action for damages. Before Judge Seabrook. Wayne superior court. June 17, 1905.

The plaintiff brought her action against the Southern Railway. Company, alleging that her husband in his lifetime was employed by the defendant as a brakeman, and while in the discharge of his duty in that capacity on one of the trains of the defendant he was knocked from the top of a car by the spout of a water-tank, which had been negligently left protruding over the track. It was alleged that he was at the time free from fault, and was standing facing the rear of the train in order that he might receive signals, as it was his duty at that time to do. The defendant answered, denying all of the material allegations of the petition so far as it related to the alleged negligence. A trial resulted in a verdict in favor of the plaintiff for $2,000; and the defendant assigns error upon the refusal of the court to grant a new trial.

*Kay, Bennet & Conyers* and *Littlefield & Poppell,* for plaintiff in error. *Glawson & Fowler* and *W. D. Nottingham,* contra.

COBB, P. J. (After stating the foregoing facts.)

1. The plaintiff was permitted to testify: "My husband's name was Henry Brown. I am the wife of Henry Brown." This evidence was objected to on the ground that the original or a certified copy of the marriage license with the entries thereon was the highest and best evidence of the marriage. This objection was wholly without merit. Under the law of this State a license is not essential to the validity of a marriage. *Askew* v. *DuPree,* 30 *Ga.* 173. The existence of a marriage may be proved by the testimony of any witness who is acquainted with the facts that under the law are sufficient to constitute a valid marriage. These facts are peculiarly within the knowledge of the parties to the marriage contract. The evidence was properly admitted.

2. A witness was permitted to testify that the deceased said the spout had knocked him down; that he was knocked off by the water-spout; that "they left it down and it struck me and knocked me off;" that he fell in between the cars and the wheels ran over his

arm; that he was on top looking back for signals when he was struck by the water-spout; that he was standing on top of the car; that he said he was struck by the pipe which they must have left down. This evidence was objected to on the ground that it was hearsay and no part of the res gestæ. The last time the deceased was seen by any of the witnesses, before he fell or was thrown from the car, he was on top of a car about midway of a train of twenty-seven cars. The train was moving out from a station, being pulled by its own engine and pushed by a yard engine. The train apparently was moving slowly, and this statement made by the deceased was made in the presence of employees on the yard engine, who reached him just as the train had been cut loose from the yard engine, and had proceeded on its way. What time elapsed from the moment the deceased fell from the top of the car until he was approached by these employees can not be definitely determined; but from all of the circumstances appearing in the record it must have been necessarily a lapse of only a very short time. When first seen by these employees he was on the side of the track, without his hat, staggering, falling down and getting up, and, upon being approached by them and asked what was the matter, made the statements above referred to. The code declares: "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, are admissible in evidence as part of res gestæ." Civil Code, § 5179. As was said by Judge Nisbet in *Mitchum's* case, 11 *Ga.* 615, "No definition can be found so comprehensive as to embrace all cases. Hence it is left to the sound discretion of the courts what they shall admit to the jury along with the main facts as part of the res gestæ." In *Bush* v. *State,* 109 *Ga.* 124, Mr. Justice Lewis said, "If the declarations spring out of the transaction, if they elucidate it, if they are made at a time so near to it as to preclude reasonably the idea of deliberate design, they will be regarded as contemporaneous." The whole law is summed up by Mr. Chief Justice Bleckley, in one sentence, in the case of *Traveler's Ins. Co.* v. *Sheppard,* 85 *Ga.* 775, when he says, "What the law altogether distrusts is not afterspeech but afterthought." See also the remarks of Mr. Justice Blandford, in *Augusta Ry. Co.* v. *Randall,* 79 *Ga.* 310. 1 Greenleaf on Evidence (16th ed.), 162f, et seq.

In determining whether a statement is a part of the res gestæ it

must, therefore, be determined whether it is subject to the objection of afterthought. In ascertaining this the time between the occurrence and the statement, the circumstances under which the statement was made, and the character of the statement itself are all matters to be considered. No arbitrary time can be fixed which will settle the question. No general rule can be laid down as to the circumstances. And while as a general rule that which is mere narrative is apt to carry with it the impress of afterthought, there may be a narrative which is entirely free from afterthought. Murray *v.* Railroad, 72 N. H. 32, 54 Atl. 289, 101 Am. St. Rep. 660. Therefore where the statement is narrative in its nature and not exclamatory, the character of the statement may or may not determine the question according to the circumstances of the particular case. In the present case the statement was narrative in its nature; and therefore the circumstances must be closely scrutinized, because narrative is generally the result of afterthought. Where the circumstances are such that it can be clearly seen that the statement was made after a full realization of the casualty, and brought about by some ulterior motive, and that it was not merely a spontaneous expression as to the circumstances of the transaction, made before such time had elapsed, and before there could have entered into the mind the purpose of giving expression to that which might be of benefit in the future, the statement is not admissible. In the present case it was only a few minutes, possibly a few moments, after the deceased had fallen from the top of the car, while he was in a dazed condition, unable to stand upon his feet, reeling and falling and rising again, that he made the statement, in response to a question by a person coming to his rescue, at a time when he was unable to take care of himself, and when from all the circumstances it is manifest that he had no conception of the grave character of the injury to which he had been subjected. There is nothing in the cases cited by counsel for the plaintiff in error which militates against the view now presented. In *Roach* v. *R. Co.*, 93 *Ga.* 785, the statement was made twenty minutes after a collision between a locomotive and a buggy. In *Pool* v. *Warren County*, 123 *Ga.* 205, Mr. Justice Candler was merely laying down the general rule that it is incumbent upon the party offering the testimony to show that it comes within the rule as to time, etc. In *W. & A. R. Co.* v. *Beason*, 112 *Ga.* 553, an examination of the

original record of file in the clerk's office shows the circumstances were such that the court might well have reached the conclusion that the statement bore the impress of afterthought. The statements by the injured man in that case "were made deliberately and connectedly. They were in no sense exclamatory, and manifestly did not proceed from him as part and parcel of the catastrophe." There is no conflict whatever in the decisions of this court as to what is the rule in regard to the admission of testimony of this character. It may be that there have been misapplications of the rule in some cases. A misapplication of the rule in a given case will not be a binding authority unless the facts of the two cases are identically the same.

3. During the trial a person not a member of the jury selected to try the case took his seat in the jury-box with the jurors. At the conclusion of plaintiff's evidence a motion for a nonsuit was made, and the jury were retired while the argument of this motion was pending, this party retiring to the jury-room with the jurors. It was an hour before the jury was recalled, and this party returned to the jury-box with the jurors. The presence of this party was not noticed by counsel or by the court, and when attention of defendant's counsel was called to it, he immediately called the attention of the court thereto, and asked that a mistrial be declared. The court thereupon swore the party, who testified that his presence in the jury-box and his going into the jury-room were the result of a mistake on his part, and he had had no communication with any member of the jury. The court overruled the motion to declare a mistrial, and this is the subject of one of the assignments of error. There was no error in refusing to declare a mistrial. There was no evidence introduced to contradict the statement of the party. His character for veracity was not attacked, and the court was justified in accepting his statement as the truth in the absence of evidence showing to the contrary, or showing that he was a person unworthy of belief.

4. There are six grounds in the motion for a new trial where the foundation of the complaint is alleged to be improper argument on the part of counsel. In each instance the argument was objected to and the objection was sustained. The assignment of error is that the court failed of its own motion to interpose and prevent the remarks, that it did not rebuke or reprimand counsel, that it

did not of its own motion declare a mistrial, that it failed to instruct the jury not to consider the remarks or permit them to affect their finding. There was no motion for a mistrial. There was no motion for instructions to the jury. There was no motion to rebuke or reprimand counsel. Under these conditions, the record does not disclose a ruling of the court which can be reviewed. The alleged improper argument was made. This argument was objected to, the court stopped the argument, and no further action was invoked. The judge is the representative of the public, and the exponent of the law, and it is his duty to interpose whenever necessary to preserve the dignity of the court, or to protect the rights of the parties whose interests may be imperiled by any impropriety occurring during the trial. He is not bound to and never should await the action of a party or counsel when an impropriety occurs in his presence. The right to review the conduct of a judge on any matter occurring during the progress of the trial depends, however, upon a ruling made by him which may be made the subject of an assignment of error. A judge may fail in the discharge of his duty as the exponent of the law, but at the same time a party may lose the right to have the conduct of the judge reviewed by a failure on his part to invoke a ruling in reference to the matter. When improper argument is made by counsel, counsel for the opposite party, in order to make the action of the judge in reference to the same the basis for a review, may object to the argument, and rest simply on the objection; and if the court fails to take any notice of the objection and allows the argument to proceed, this conduct may be reviewed; or he may, in addition to his objection, move for appropriate instructions to the jury, or for a reprimand or rebuke of counsel, in order that the jury may be impressed with the grave nature of the impropriety which has taken place; or, if the impropriety is of a very grave character, he may move for a mistrial, and upon the refusal of the court to do that which ought to have been done on the motion made, whatever its nature may be, the conduct of the judge will then be a subject for review by this court. *O'Dell* v. *State,* 120 *Ga.* 152; *Rawlings* v. *State,* 124 *Ga.* 33. In the present case counsel in each instance objected to the argument, and did nothing more. The court sustained the objection, and caused counsel to desist. So far as the motion made by counsel was concerned, the court ruled in

his favor; and objection can not be taken now to some matter on which no ruling from the court was invoked.

5. Error was assigned upon the failure of the judge to instruct the jury that they should not consider the statement of deceased unless they were satisfied that it was free from all suspicion of device or afterthought. An instruction to this effect would not have been proper. The court correctly held the evidence admissible, and the weight to be given it as admitted was the only matter within the domain of the jury. The rule that a failure to give instructions as to the credibility of witnesses, the weight to be given to testimony and the like, will not work a reversal in the absence of an appropriate written request on the subject, disposes of that ground of the motion for a new trial which complains that the court failed to give to the jury the rules for determining where the preponderance of evidence lay.

6. Complaint is made that the court did not submit to the jury the theory that the homicide of the plaintiff's husband was the result of an accident for which no one was to blame. The court distinctly instructed the jury that before the plaintiff could recover it must appear that the defendant was at fault, and that the deceased was not guilty of negligence; and while there is no distinct statement that if the homicide was the result of an accident there could be no recovery, it was impossible for the jury to have reached the conclusion, from what the court said, that there could be a recovery in such a case. The charge, although not long or elaborate, was filled with instructions containing the words "fault," "blame," and "negligence," in reference to the foundation of the plaintiff's claim. The charge precludes the idea of a recovery for an accident. If the defendant desired further instructions on this subject, a request for the same should have been made.

7. There are also other assignments of error upon several extracts from the charge of the court. After a careful reading of the charge as a whole, we have reached the conclusion that these extracts are not erroneous for any of the reasons assigned, if erroneous at all. If any error at all was committed in any of them, it was not of such a character as to require a reversal of the judgment. The charge was brief and pointed. It might well have been more elaborate; but when it is taken as a whole, it clearly submitted to the jury the controlling issues in the case, that is,

whether the plaintiff's husband was free from fault and whether the defendant was negligent. No intelligent jury, under the instructions of the court, could have arrived at a verdict in favor of the plaintiff unless they had reached the conclusion that the plaintiff's husband was free from fault and the defendant was negligent, and the death of the plaintiff's husband was the consequence of this negligence. There was evidence authorizing the verdict, and we see no sufficient reason for reversing the judgment.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*