JOHNSON *v.* THE STATE.

No. 7369.   JANUARY 15, 1930.   REHEARING DENIED FEBRUARY 22, 1930.

*Pierce Brothers* and *L. L. Fleming,* for plaintiff in error.

*George Hains, solicitor-general,* and *John M. Graham,* contra.

HINES, J.   The jury in the trial of Johnson for murder found him guilty of voluntary manslaughter; and under the act of August 18, 1919 (Acts 1919, p. 387), providing for indeterminate sentences, fixed his punishment at not more nor less than 20 years. He moved for a new trial upon the general and certain special grounds, and in arrest of judgment.   The court overruled both motions, and the accused excepted.

■   Among the special grounds of his motion for new trial were these:   (a)   Said act is unconstitutional, because it violates article 1, section 2, paragraph 1, of the constitution of this State, which declares that "In all prosecutions or indictments for libel, the truth may be given in evidence; and the jury in all criminal cases shall be the judges of the law and the facts.   The power of the judges to grant new trials in case of conviction is preserved."   (b)   Said act violates article 1, section 1, paragraph 23, of the constitution of this State, which provides that "The legislative, judicial, and executive powers shall forever remain separate and distinct, and

no person discharging the duties of one shall at the same time exercise the functions of either of the others, except as herein provided." (c) Said act is unconstitutional because it violates article 6, section 1, paragraph 1, of the constitution of this State, which provides that "The judicial powers of this State shall be vested in a Supreme Court, a Court of Appeals, superior courts, courts of ordinary, justices of the peace, commissioned notaries public, and such other courts as have been or may be established by law." The motion in arrest of judgment was based upon the same grounds.

Clearly this act does not violate the provision first set out above. It in no way impairs that portion of said provision which declares that the jury shall be the judges in all criminal cases of the law and the facts; nor does said act impinge upon the other portion of said provision which declares that the power of the judges to grant new trials in case of conviction shall be preserved. These powers are in no way affected by this act. They have the same force since the passage of this act as they did prior to its passage. The decision announced in the 3d headnote of *Cain* v. *State,* 166 *Ga.* 539 (144 S. E. 6), dealt with the act of 1927, which provides for the imposition of misdemeanor sentences in city courts in counties having a population between 60,000 and 70,000, which we held unconstitutional under the facts of that case, and is not applicable under the facts involved in this case.

The constitutionality of this act is further attacked upon the ground that it violates that provision of the constitution of this State which declares that "The legislative, judicial, and executive powers shall forever remain separate and distinct, and no person discharging the duties of one shall at the same time exercise the functions of either of the others, except as herein provided." Civil Code (1910), § 6379. Counsel for the defendant urges that the indeterminate-sentence act, with which we are dealing, violates this provision of the constitution, because it invades the province of the judiciary, and strips the judge of a constitutional court of a power vested in him by the constitution and vests the same in the jury. We do not think that this attack is sound. The act provides "that the jury in their verdict on the trial of all cases of felony not punishable by life imprisonment shall prescribe a minimum and maximum term, which shall be

within the minimum and maximum prescribed by law as the punishment for said crime; and the judge in imposing the sentence shall commit said convicted person to the penitentiary in accordance with the verdict of the jury." Acts 1919, p. 387; 11 Park's Code Supp. 1922, § 1081(e); Michie's Code, § 1060(1). The ground of attack upon the constitutionality of this act is based upon the premise that the power conferred by it upon the jury is vested by the constitution in the judiciary, of which the legislature can not deprive it under this provision of this constitution. Is this premise sound? This depends on whether the power exercised by the legislature is judicial and not legislative. If this power is vested in the judicial department by the constitution, that department can not be deprived of it by the legislature. *Bradley* v. *State,* 111 *Ga.* 168 (36 S. E. 630); *Williams* v. *State,* 138 *Ga.* 168 (74 S. E. 1083). The power to create crimes and to prescribe punishment therefor is legislative. In *Gibson* v. *State,* 38 *Ga.* 571, this court held that if a statute failed to fix a penalty for an offense, none could be inflicted. In *Hill* v. *State,* 53 *Ga.* 125, Judge McCay, who delivered the opinion of the court, said: "The judge is a mere agent of the law. He has no discretion except as it is given him. The *penalty* is affixed *by law.* A crime is a felony or not, according to the penalty fixed by the legislature; and it is not within the province of the courts to help out the legislature. Under our system, that body has exclusive jurisdiction over the subject, and if, by mistake or otherwise, it has failed to provide for the punishment of a crime, it must go unpunished." The legislative power of this State is vested in the General Assembly. Civil Code (1910), § 6410. All legislation is exclusively within the power of the legislature. This being so, it can prescribe determinate or indeterminate sentences for crime.

In the absence of legislation, the judiciary can not exercise discretion in fixing the quantum of punishment to be inflicted upon criminals. Such power is not one which inheres in the judicial department. The legislature can fix a determinate term of punishment for an infraction of a criminal law; and the judiciary is without authority to exercise any discretion in imposing such penalty. The legislature can authorize the judiciary to impose an indeterminate sentence, and clothe the judge with discretion in fixing the quantum of punishment within the minimum and maximum limits

of punishment prescribed by the act creating the crime. In exercising such power and discretion the judge acts, not upon any inherent power residing in the judicial department, but in pursuance of power conferred upon him by the legislature. In refusing to grant such power of imposing indeterminate sentences the legislature does not deprive the judicial department of any power resting in it under the constitution. In granting such power and discretion the legislature does not do so in pursuance of any power inherent in the judicial department, but in pursuance of power inherent in the legislative department. In view of the fact that the legislature alone has the power to authorize the judge to impose indeterminate sentences, and in view of the further fact that no such power inheres in the judicial department, we see no valid reason why the legislature can not clothe the jury with the right to fix an indeterminate sentence. As we have seen, the imposition of an indeterminate sentence does not rest upon power inherent in the judicial department under the constitution of this State. This being so, the conference of such power upon the jury does not impair or destroy any power of the judicial department. Whether the bestowal of such power upon the jury is wise or unwise is not a matter for determination by this court. We are only concerned with the question whether the bestowal of such power deprives the judicial department of any power vested in it under the constitution of this State.

We have been able to find but one case in which this principle has been announced. In State v. Hockett, 70 Iowa, 442 (30 N. W. 742), the Supreme Court of Iowa held that an act of the legislature of that State which provided that the jury, on the trial under indictment for murder, must designate, in a verdict of guilty, whether the accused shall be punished by death or imprisonment for life at hard labor, was not unconstitutional and void as trenching upon the judicial power, which by the constitution of that State was vested in the district and other courts. Furthermore, the conference of such power upon the jury is in effect a bestowal of it upon the judicial department of the government. The jury is a most essential part of the judicial department. The constitution declares that "The right of trial by jury, except where otherwise provided in this constitution, shall remain inviolate." Civil Code (1910), § 6545. The jury is as important a branch of the judi-

cial department as the judge himself. This being so, the bestowal of this power of fixing indeterminate sentences upon the jury does not impair or violate the provision of the constitution with which we are dealing. If this power were inherent in that department, this legislation does not take it away. If it is not inherent in that department, as we think it is not, then this legislation confers the power upon that department and does not take it away. So we are of the opinion that the power to declare what shall be the appropriate punishment for an ascertained crime belongs solely to the legislature. That body may provide a minimum and a maximum punishment, and leave to the discretion of the judge or jury the power to fix a definite term between these limits; or it may provide a fixed term, as is sometimes done, thus leaving nothing to the jury, except to respond to the issue of guilty or not guilty. Woods *v.* State, 130 Tenn. 100 (169 S. W. 558, L. R. A. 1915F, 531).

A statute providing for the imposition of indeterminate sentences upon all persons convicted of certain felonies, and authorizing their release from confinement after serving the minimum sentence, is not unconstitutional as impinging upon the judicial power of the courts or the pardoning power of the Governor. Kansas *v.* Stephenson, 69 Kan. 405 (76 Pac. 905, 105 Am. St. R. 171, 2 Ann. Cas. 841). The pronouncing of the indeterminate sentence is undoubtedly a judicial act; but the punishment which the sentence pronounces comes from the law itself. State *v.* Dugan, 84 N. J. L. 603, 609 (89 Atl. 691, 694); Territory *v.* Armstrong, 22 Hawaii, 526, 535. Indeterminate-sentence laws do not violate constitutional provisions providing for the segregation of governmental powers into three departments, legislative, executive, and judicial, and prohibiting the exercise of the powers of one department by either of the others. Ex Parte Lee, 177 Cal. 690 (171 Pac. 958); Kansas *v.* Page, 60 Kan. 664 (57 Pac. 514); State *v.* Dugan, supra; George *v.* People, 167 Ill. 647 (47 N. E. 741); State *v.* Duff, 144 Iowa, 142 (122 N. W. 829, 24 L. R. A. (N. S.) 625, 138 Am. St. R. 269); People *v.* Adams, 176 N. Y. 351 (68 N. E. 626, 63 L. R. A. 406, 98 Am. St. R. 675); Wilson *v.* Com., 141 Ky. 341 (132 S. W. 557); People *v.* Cook, 147 Mich. 127 (110 N. W. 514); Wallace *v.* State, 91 Neb. 158 (135 N. W. 549); Mutart *v.* Pratt, 51 Utah, 246 (170 Pac. 67); People *v.* Hale, 64 Cal. 523 (222 Pac. 148). Indeterminate-sentence acts are not

vulnerable to the objection that they transfer judicial discretion to a non-judicial body, or that they assume to restrict the pardoning power. Com. *v.* Kalck, 239 Pa. 533 (87 Atl. 61). A statute authorizing indeterminate sentences does not unwarrantably encroach upon the judiciary, and is not unconstitutional because it contravenes the provisions of the constitution in regard to the pardoning power. People *v.* Madden, 120 App. Div. 338 (105 N. Y. Supp. 554).

"Inasmuch as a legislature may fix a definite and certain term of imprisonment for any particular crime, and this without placing any discretion in the hands of the court whose duty it is to carry out the legislative mandate, it must necessarily follow that an indeterminate-sentence statute violates no constitutional right of the defendant." 8 R. C. L. 261, § 270.

In this State it has been the general, if not the universal, practice of the legislature to fix indeterminate sentences; and leave to the judge or jury between fixed limits the determination of the precise punishment which shall be inflicted. It will hardly be contended that statutes which fix minimum and maximum limits for punishment, and which leave to the judges the right to impose any quantum of punishment between these limits, are unconstitutional because they invade the province of the judicial department, or that they are unconstitutional because they delegate legislative power to the judicial department. As the legislature has the sole power to prescribe punishment for crime, and as the judicial department and the Governor have no such power, it is not an invasion of the powers of the judicial department for the legislature to fix the limits of punishment for violations of the criminal laws, and leave to the jury to say within these limits what punishments shall be inflicted. We know of no constitutional provision which lodges in the judicial department the power to prescribe the punishment for crime, or to regulate the manner or method by which such punishment shall be meted out. Statutes authorizing juries to fix the punishment for infractions of the criminal law have been long practiced in this State, and the power of the legislature to do so has never been questioned. This power has been conferred on juries in cases of treason (Penal Code, § 51); insurrection, or attempt to incite insurrection (§ 57); murder (§ 63); fœticide, (§ 80); castration (§ 90); rape (§§ 94, 98); arson in a city,

town, or village, or the burning of an occupied dwelling-house on a farm or elsewhere, producing the death or maiming of any person (§§ 134, 135, Acts 1924, pp. 192, 193) ; burning or attempting to burn any railroad-bridge (§ 142) ; any arson producing death (§ 144) ; death from fighting a duel (§ 356) ; rocking or shooting into passenger-cars (§ 512) ; wrecking or attempting to wreck trains (§ 513) ; dynamiting certain buildings (§ 786) ; and reduction of certain felonies to misdemeanors (§§ 1062, 1196).

So it will be seen that there are many statutes in this State, many of which have been in existence for long periods of time, which provide for indeterminate sentences to be fixed by juries. To hold that such statutes are unconstitutional would strike down a large body of the criminal statutes of this State, and would render lawful many acts which are now punished as grievous offenses. In view of the serious consequences which would follow, we should hesitate long before holding unconstitutional the statutes which leave to the jury the fixing of indeterminate sentences. For the reasons above assigned, this act does not violate article 6, section 1, paragraph 1, of the constitution (already quoted), for the reason that it divests the judges of the superior courts of the power of imposing the sentences of law after verdict of the jury is found in the trial of a case in said courts. This is so for the reason that this act does not deprive such judges of such power. So we are of the opinion that this act is not unconstitutional upon any of the grounds upon which it is attacked.

■ On the trial Wyatt Stephens was questioned by the solicitor-general as follows: Q. "I will ask you if at any time was Mr. Johnson responsible for your mother separating from your father?" A. "Well, he come there, and was invited, I think, to not come there any more." Q. "Who was invited not to come there any more?" A. "Mr. Johnson." Q. "I will ask you this: In this statement here that you gave to us the day after your father was killed—I just happened to notice it here, 'My daddy and mother was separated twice on account of Johnson.' Did you tell us that?" A. "Yes, sir." Q. "Was that true?" A. "The first time daddy thought it was on account of Johnson, I think."

When the witness answered the last question the following questions were propounded by the court and the following answers elicited: Q. "What?" A. "That it was on account of John-

son." Q. "What did you say? That your daddy thought it was on account of Johnson?" A. "Yes, sir." Q. "On account of Johnson?" A. "Yes, sir." In the 4th ground of his motion for new trial the defendant excepts to such questions by the court, upon the grounds that (a) they unduly impressed the jury with the idea that Johnson had been the occasion of the separation of the deceased from his wife, which was most prejudicial to the defendant; and (b) because such questions by the court were an intimation of opinion that the court believed that Johnson had caused a separation of the deceased and his wife. We do not think that these exceptions to the questions propounded by the court are well taken. Under the Penal Code, § 1058, "It is error for the judge of the superior court, in any case, during its progress, or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved, or as to the guilt of the accused; and a violation of the provisions of this section shall be held by the Supreme Court to be error, and the decision in such case reversed, and a new trial granted, with such directions as the Supreme Court may lawfully give." In propounding the questions to this witness the judge did not express or intimate his opinion as to what had or had not been proved, or as to the guilt of the accused. The judge has the right to propound a question or a series of questions to any witness, for the purpose of developing fully the truth of the case; and the extent to which the examination conducted by the court shall go is a matter within his discretion. *Gillis* v. *Bowman,* 132 *Ga.* 762 (64 S. E. 1096) ; *Williams* v. *State,* 147 *Ga.* 440 (94 S. E. 553) ; *Marcus* v. *State,* 149 *Ga.* 209 (99 S. E. 614). In doing so the judge should be careful not to exercise this right in such a manner as to intimate or express an opinion upon what has or has not been proved, or as to the guilt of the accused. *Harris* v. *State,* 61 *Ga.* 359; *Grant* v. *State,* 122 *Ga.* 740, 743 (50 S. E. 946). The examination of the witness by the court did not take such course as to become argumentative in its character, nor did the judge express or intimate an opinion as to what had or had not been proved, or as to the guilt of the accused; and for this reason the questions propounded by the court furnish no cause for reversing the judgment. *Gillis* v. *Bowman,* supra.

■ In the 5th ground of the motion for new trial the defendant assigns error on the court's refusal to rule out the following

material testimony of M. V. Still, a witness for the State: "Why, he went on to say that he started to Louisville that morning to finish some logging or finish something that pertained to some logging—a little job he had to do. For some reason or other he came back. He didn't say why he came back. When he came back he found Mrs. Stephens and Mr. Johnson together in the bed. That is what he told me." This witness testified that the deceased at the time of making the above declaration said he knew that he was not going to get well. The evidence disclosed that the defendant shot the deceased with a pistol. The bullet entered the left side of the deceased just above the hip, and severed the spinal cord. The deceased died from sepsis and exhaustion as the result of this severance of his spinal cord. Counsel for the defendant moved to exclude this testimony, offered as a dying declaration, upon the ground that the evidence showed that the declaration was made the second day after the shooting, that declarant died about two months afterwards, and that the evidence failed to show that he was in articulo mortis.

To render admissible dying declarations as to the cause of his death and the person who killed him, they must be made by the declarant in the article of death, and he must be conscious of his condition. Penal Code, § 1026. Consciousness on the part of the deceased that he was dying and was actually in extremis may be inferred, not only from his statements, but also from the nature of the wound and other circumstances. *Campbell* v. *State,* 11 *Ga.* 353 (3) ; *Dumas* v. *State,* 62 *Ga.* 58 (2) ; *Washington* v. *State,* 137 *Ga.* 218 (73 S. E. 512) ; *Fitzpatrick* v. *State,* 149 *Ga.* 75 (99 S. E. 128) ; *Bass* v. *State,* 152 *Ga.* 415 (8) (110 S. E. 237). The actual period of survival after making the declaration is not controlling. The necessary element is the declarant's expectation; and the subsequent duration of life, whatever it may turn out to be, has no relation to his state of mind when he made the declaration. 3 Wigmore, Ev. 171, § 1441. The question does not depend upon the length of time between the declaration and the death of the declarant, but upon the declarant's mind at the time of the declaration, and his belief that he is in a dying state. Rex *v.* Reaney, 7 Cox, C. C. 209, 212. Where the declarant lived 3 weeks after making a dying declaration, such declaration was admitted. Rex *v.* Bonner, 6 C. & P. 386; Rex *v.* Bernadotti, 11 Cox, C. C. 316. In Boulden

**824**

*v.* State, 102 Ala. 78, 84, 15 So. 341, the lapse of time between the declaration and death of the declarant was 2 months. In State *v.* Craine, 120 N. C. 601, 27 S. E. 72, the lapse of time between the declaration and death of the declarant was 5 months. In Walker *v.* State, 88 Tex. Cr. 389 (227 S. W. 308), the interval was 6 weeks. A prima facie case that declarant is in extremis and is conscious thereof is sufficient to admit dying declarations to the jury. *Anderson* v. *State,* 117 *Ga.* 255 (43 S. E. 835). Under the evidence and the application of the above principles of law, the State made out a prima facie case for the introduction of this testimony; and the court did not err in refusing to rule it out.

■ The defendant introduced in evidence a written statement signed by Stephens, the deceased, in which he said that he made such statement that no injustice might be done the defendant, Johnson, for shooting him in Richmond County, Georgia, on December 25, 1928, and to show what actually happened at the time of the shooting. Stephens further stated that Johnson had · come to his house on 15th Street at his request, on Christmas day; and that while Johnson was in the act of drinking water on the back step, he (Stephens) came out, without the knowledge of Johnson, from the inside of the house, knocked him out into the yard, sprang out after him, and as he was getting up from the ground Stephens grabbed a hammer and started after Johnson as he was running backward, and while Stephens was in the act of striking Johnson with the hammer Johnson shot Stephens in defense of his life. The court permitted Ollie Stephens, a witness for the State, to testify that the deceased was his brother, that he came to Augusta to see his brother after the latter had called for him, that he saw his brother after Christmas in the hospital, that he recalled seeing and hearing the above statement given by his brother, that he went to the hospital and saw his brother, who stated that he didn't think he was going to get well, and that he signed this statement to have his family cared for, and to get something for his children. To the admission of this testimony the defendant objected on the grounds that it was hearsay and not shown to be a dying declaration, that it was prejudicial to his defense, and that it tended to show that the written statement was obtained by a promise which necessarily impressed the jury with the idea that it was fraudulently obtained, and thus caused them to disregard it. The

court overruled the objection and permitted the witness to give such testimony. To this ruling the defendant excepted in the 6th ground of his motion for new trial.

Where dying declarations are relied upon by the State to prove the guilt of the accused, it is admissible to show that the deceased had made statements concerning the transaction, conflicting with such dying declarations. *Battle* v. *State,* 74 *Ga.* 101. On a trial for murder, when dying declarations of the deceased have been introduced against the accused, it is competent for the latter to impeach these declarations by showing that the deceased, because of general bad character, was unworthy of belief. *Nesbit* v. *State,* 43 *Ga.* 239; *Redd* v. *State,* 99 *Ga.* 210 (25 S. E. 268); *Washington* v. *State,* supra. Dying declarations can be used by the accused for the purpose of showing his innocence. 3 Wigmore, Ev. 187, § 1452; Mattox *v.* U. S., 146 U. S. 140 (13 Sup. Ct. 50, 36 L. ed. 917); Moore *v.* State, 12 Ala. 767 (46 Am. D. 276); People *v.* Southern, 120 Cal. 645 (53 Pac. 214); Green *v.* State, 89 Miss. 331 (42 So. 797); Com. *v.* Bednorciko, 264 Pa. 124 (107 Atl. 666). This being so, we think that when the defendant introduces dying declarations of the deceased to show his innocence, the State can rebut the same by proving declarations of the deceased tending to show that the dying declarations are not a true account of the homicide, or that they were made for a purpose which discredited their verity.

█ The verdict was supported by the evidence.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., who dissent.*

ATKINSON, J., dissenting. Relatively to the ruling in the first headnote, the decision of this court in *Cain* v. *State,* 166 *Ga.* 539 (3) (144 S. E. 6), is controlling. In that decision it was said "The act of 1927, supra, is in violation of art. 1, sec. 2, par. 1, of the constitution of the State (Civil Code of 1910, § 6382), which provides that 'the jury in all criminal cases shall be the judges of the law and facts. The power of the judges to grant new trials in cases of conviction is preserved.'" That decision was rendered by the entire bench of six Justices, and is binding as a precedent upon this court until overruled by the entire bench of six Justices. A formal motion or request has been made to review and overrule that decision. The motion should prevail, but all the Justices

826

do not concur in that view; and consequently the decision must stand, and remain binding as a precedent.

Relatively to the ruling in headnote 3(b), it is declared in the Penal Code, § 1026: "Dying declarations, made by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, are admissible in evidence in a prosecution for the homicide." Under this law, a person, having received a mortal wound and made a declaration as set out in this case, and lived for a period of two months after such statement, was not in the "article of death" at the time of the declaration, and consequently the declaration was inadmissible in evidence as a dying declaration. In this connection see *Mitchell* v. *State*, 71 *Ga.* 128; *Hawkins* v. *State*, 141 *Ga.* 212 (80 S. E. 711).