## 70257. BRANTLEY v. THE STATE.
### (338 SE2d 694)

POPE, Judge.

Defendant Michael DeWayne Brantley was convicted of aggravated sodomy and was sentenced to serve 20 years in prison. In this appeal defendant enumerates four errors.

1. Defendant's first two enumerations of error concern alleged prejudicial comments made by the prosecuting attorney during the State's opening statement. The record discloses that during the opening statement, the prosecutor stated that he intended to put the victim, a three-year-old boy, on the stand. Acknowledging that the trial judge would first have to qualify the three-year-old as a witness, the prosecutor told the jury that the victim "may not know the correct terminology, but when you ask him as I will do in this courtroom . . . 'show me where your pee pee is,' [h]e'll point right there. And I will ask him . . . 'where did DeWayne [the defendant] put his pee pee?' And he's going to point right there." Counsel for defendant objected on the ground that the prosecutor was going beyond the scope of the opening statement in that the prosecutor was "telling in detail what . . . he expects and it's not supposed to be in detail. It's supposed to

be in general terms." The objection was overruled. The prosecutor then stated that the victim's grandmother and his father would tell the jury that they both heard the victim state that the defendant hurt him by putting his "pee-pee" in his "doo-doo." No objection was made to this comment nor to the prosecutor's comment concerning confirming testimony by the victim's physician. On appeal defendant first alleges error in that these comments amounted to the prosecutor becoming a witness on behalf of the State and, in that capacity, giving unsworn hearsay testimony which was misleading and prejudicial. Defendant also alleges that the trial court erred in not interposing curative measures to remove the alleged prejudicial effect.

While opening statements by the prosecutor are limited to what the State expects to prove, *Watson v. State*, 137 Ga. App. 530 (1) (224 SE2d 446) (1976), he may state what he expects in good faith a witness will testify if the witness is going to testify. *Hall v. State*, 138 Ga. App. 20 (1) (225 SE2d 705) (1976). Any objection in this regard must be raised in the trial court before it can be heard on appeal. *Cochran v. State*, 213 Ga. 706 (2) (100 SE2d 919) (1957). Defendant did not object to the prosecutor's statements concerning the testimony of the grandmother, father, and family physician. Therefore, any alleged error as to this portion of the State's opening statement was waived. *Harvard v. State*, 162 Ga. App. 218 (2) (290 SE2d 202) (1982). Although defendant did object to the prosecutor's statements concerning the victim's testimony, the error enumerated on appeal is not the same as the objection urged at trial. It is well settled that a reason urged by enumeration of error on appeal which is different from that urged below will not be considered for the first time on appeal. See *134 Baker St., Inc. v. State*, 172 Ga. App. 738 (5) (324 SE2d 575) (1984); *Craig v. State*, 130 Ga. App. 689 (3) (204 SE2d 307) (1974). Defendant's first two enumerations of error present no ground for reversal.

2. Over objections by the defendant, the victim's grandmother and father were allowed to testify about statements the victim made to them several hours after the alleged incident occurred. Defendant argues that their testimony constituted hearsay. The State, on the other hand, contends that the testimony fell within the res gestae exception to the hearsay rule.

OCGA § 24-3-3 defines res gestae testimony as "[d]eclarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought. . . ." Of this exception, Chief Justice Bleckley said, "What the law altogether distrusts is not after-speech but afterthought." *Travelers Ins. Co. v. Sheppard*, 85 Ga. 751, 775 (12 SE 18) (1890). In cases when a statement is narrative rather than exclamatory, "the circumstances must be closely scrutinized, because narrative is generally the result of afterthought."

*Southern R. Co. v. Brown*, 126 Ga. 1, 4 (54 SE 911) (1906). "If the declarations appear to spring out of the transaction — if they elucidate it — if they are voluntary and spontaneous, and if they are made *at a time so near to it*, as reasonably to preclude the idea of deliberate design, then they are to be regarded as contemporaneous." *Mitchum v. State*, 11 Ga. 615, 627 (1852). However, "[n]o precise time can be fixed a priori when the res gestae ends, but each case must turn on its own circumstances, the inquiry being rather into events than to the precise time which has elapsed." *Turner v. State*, 212 Ga. 199, 200 (91 SE2d 501) (1956). " 'The admissibility of such declarations does not depend upon any arbitrary time or general rule for all cases, but is left to the sound discretion of the court in determining from the time, circumstances and statements in question, whether declarations meet the requirements of being free from "all suspicion of device or afterthought." (Cit.)' [Cit.] It is also a well established rule of law that if the admissibility of evidence is doubtful, the rules of evidence require that the evidence be admitted and its weight and effect left to the jury. [Cit.]" *Wallace v. State*, 151 Ga. App. 171, 173 (259 SE2d 172) (1979). A trial court's determination that the declaration offered as part of the res gestae "is sufficiently informative and reliable as to warrant being considered by the jury will not be disturbed on appeal unless that determination is clearly erroneous." *Andrews v. State*, 249 Ga. 223, 228 (290 SE2d 71) (1982); see *Richardson v. State*, 172 Ga. App. 12 (2) (322 SE2d 66) (1984).

In the case at bar, the evidence shows that defendant was alone with the victim only between 1:45 p.m. and 3:00 p.m. About 3:00 p.m., defendant, his family, and the victim got in a van and went on various errands. The Brantleys returned the victim home about 6:00 p.m. that evening. When his grandmother picked him up, the victim began screaming. When asked twice what was wrong, he told her that "Wayne [the defendant] put his pee pee in my doo doo." The father testified that the victim repeated the same statement when he came in the room. Applying the standard in *Andrews*, we are unable to say that under these circumstances, the admission of testimony here was clearly erroneous. See, e.g., *Busby v. State*, 174 Ga. App. 536 (1) (330 SE2d 765) (1985); *Sparks v. State*, 172 Ga. App. 891 (1) (324 SE2d 824) (1984); *Samples v. State*, 169 Ga. App. 605 (4) (314 SE2d 448) (1984). Compare *Sanborn v. State*, 159 Ga. App. 608 (1) (284 SE2d 110) (1981), and cit.

3. Defendant's remaining enumeration of error alleges that the trial court erred by not allowing defense counsel to impeach the credibility of the hearsay declarant, the three-year-old victim. At trial the court examined the victim to determine whether he was competent to testify. The trial court ruled the victim was incompetent because the child did not understand enough about the situation or an oath to

testify. During the presentation of the defense, counsel for defendant asked Iris Brantley, mother of defendant, what kind of child was the victim. The State objected on the ground that the question was improper because defense counsel was trying to impeach the statements of the victim who did not testify. This objection was overruled but later objections to questions elicited about the victim's reputation for truthfulness were sustained. The trial court stated that the defendant could not delve into the truthfulness of a three-year-old child who did not testify.

Although there appears to be no precedent in Georgia which has addressed the right of a party (in this case, defendant) to impeach a hearsay declarant whose statements have been admitted into evidence as part of the res gestae, Georgia courts have allowed impeachment of dying declarations. See *Johnson v. State*, 169 Ga. 814, 825 (152 SE 76) (1930); *Redd v. State*, 99 Ga. 210 (1) (25 SE 268) (1896). Evidence of the bad character of the deceased as well as prior inconsistent statements are admissible to attempt to impeach the dying declarant. *Redd*, supra; *Battle v. State*, 74 Ga. 101 (2) (1885). The solemnity of the scene and hour gives the declarations of a dying man a sanctity of truth, more impressive and potential than the formalities of an oath. *Hill v. State*, 41 Ga. 484, 503 (1871). A res gestae statement, however, derives its credibility not from the declarant's veracity, but from its relation to the transaction out of which it springs. *Mitchum v. State*, supra at 624. Yet any hearsay statement that qualifies as an exception to the hearsay rule is introduced for its truth. This makes the credibility of the hearsay declarant important. The credibility of the declarant cannot be attacked by a party by cross-examination since the statement is hearsay. See OCGA § 24-3-1 (a). Impeachment, therefore, is the only method by which a party can attack the credibility of the hearsay declarant and, thus, the accuracy of the statement. To insure that all relevant evidence is brought before the trier of fact, we hold that a party must be provided with the opportunity to impeach the credibility of a res gestae declarant. Although this court is embarking on new ground in Georgia, our holding is consistent with the Federal Rules of Evidence.

Federal Rule of Evidence 806 allows the impeachment of any hearsay declarant. It provides that "[w]hen a hearsay statement . . . has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness." See also *United States v. Bovain*, 708 F2d 606 (12) (11th Cir. 1983); *United States v. Wuagneux*, 683 F2d 1343 (24) (11th Cir. 1982). According to the notes of the Advisory Committee on Proposed Rules, the rationale behind rule 806 is that "[t]he declarant of a hearsay statement which is admitted in evidence is in effect a witness. His

credibility should in fairness be subject to impeachment and support as though he had in fact testified." The Federal Rule thus allows introduction of relevant evidence which would be admissible for impeachment purposes if the declarant was in court.

In light of the foregoing, the trial court erroneously denied defendant the opportunity to impeach the res gestae statements of the victim. Nevertheless, we do not view such error as requiring reversal under the facts in this case. The hearsay declarant, a child who was just past his third birthday at the time of the incident and just four at the time of trial, had been declared judicially to be incompetent to testify because of a lack of understanding of the difference between truth and fabrication. The jury eventually became aware that the child would not testify. To attack the declarations the child had allegedly made, defendant attempted to impeach his statements by showing through defendant's mother that the child's general reputation in the community was that he lied.

A three-year-old child would not normally be exposed to a very wide-scoped community so as to establish within it a reputation for truthfulness or untruthfulness. The evidence here does not show that the child had any measure of dealings with members of the community at large which would subject him to the formation of public opinion about his veracity. Most of his time prior to the offense was spent in the company of his family or the neighbor family of which defendant and the witness were members. Thus, the likelihood of a reputation as to this characteristic is small, and even if he had a community reputation on this score, at his near-infant age it could not be very substantially based.

Moreover, although the witness was not permitted to testify whether or not she knew the child's reputation in the community (assuming he had one), and presumably would not have been permitted to state what that reputation was if she knew it, defendant had the advantage of much more devastating evidence. Generally, the witness' opinion of a person's character is not permitted. See *Taylor v. State*, 176 Ga. App. 567 (3) (336 SE2d 832) (1985). The witness we are focusing on here is defendant's mother, who was the child's neighbor and knew him from infancy; it was at her home he had spent much time for several months, while her daughter-in-law (defendant's wife) tended him. She testified without objection that he was "kind of an odd child," "a spoiled type child," that he was a typical small child (she had experience with them) in that at times "he wouldn't tell the truth, just like any other small child," and that sometimes he was punished for not telling the truth. Thus, the jury heard much more direct evidence on the matter of this child's veracity than what his reputation for it would be from within the confines of the child's small community. It would not have benefited defendant to any sig-

nificant degree for the witness to have testified that the child had a reputation in the community and that the reputation is that he does not always tell the truth. The latter is precisely what she said, based on personal experience. It was recently stated in *State v. Braddy*, 254 Ga. 366, 367 (330 SE2d 338) (1985): "Conduct reveals character as accurately as reputation does."

Finally, this is not a case where the child's declaration was the sole evidence of the crime; the observations of blood in his stool and the positive medical testimony were strong corroboration. Therefore, we regard the error as harmless under the circumstances and, as such, it does not require a reversal of the conviction. " 'It is not every erroneous exclusion of evidence that will suffice to reverse a judgment, and a case will not be reversed for error in the rejection of evidence unless the error results in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right. It is for the reviewing court to determine whether prejudice has resulted; and if such exclusion did not prejudice the complaining party, and could not have affected the result, the error is harmless. [Cit.]' [Cit.]" *Dill v. State*, 222 Ga. 793, 794 (152 SE2d 741) (1966).

*Judgment affirmed. Deen, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 20, 1985.

*Samuel A. Hilbun*, for appellant.
*Beverly B. Hayes, District Attorney, William T. McBroom III, Assistant District Attorney*, for appellee.