543 S.E.2d 45 (2000)
247 Ga. App. 10
ALLEN
v.
The STATE.
No. A00A0920.
Court of Appeals of Georgia.
November 28, 2000.
Certiorari Denied May 7, 2001.
*46 Steven H. Sadow, Atlanta, for appellant.
David McDade, Dist. Atty., William H. McClain, Asst. Dist. Atty., for appellee.
PHIPPS, Judge.
A jury found Robert Howard Allen guilty of four counts of cruelty to children and one count of aggravated battery. He was sentenced to serve 20 years concurrently on all counts. He appeals, claiming that the trial court erred by admitting certain hearsay statements and excluding others and by refusing to charge the jury on the lesser included offenses of reckless conduct and battery. Finding no harmful error, we affirm.
On March 19, 1998, Allen and his wife brought K.J., a six-year-old girl, to the Cobb General Hospital emergency room. She was treated by Dr. Michael Gilhully, who noted that she had a large bite mark and bruise on her cheek, several other bruises on her face, large bruises on her buttocks, and a very tender abdomen. Dr. Gilhully testified that he asked Allen, K.J.'s uncle, what had happened to her. Allen told him that K.J. had had a seizure and that he had put his fingers inside her mouth and was bitten. He said that to free his fingers, he bit K.J. on the cheek. Allen also told the doctor that he thought he had spanked her too hard and caused the bruises on her buttocks. A CT scan of K.J.'s abdomen revealed that she had severe internal injuries. Her liver and spleen were lacerated, causing disruption of the blood supply and ultimately necrosis of part of her liver. K.J.'s condition was determined to be life-threatening, and she was transferred to Scottish Rite Children's Hospital for further treatment.
Dr. Gilhully was skeptical of Allen's version of the events because there was no indication that K.J. had suffered a seizure. Based on the bite marks on her face, the massive internal injuries, the multiple bruises on her buttocks that went far beyond what the doctor would normally associate with routine discipline, the other bruises on her body, *47 and the doctor's skepticism about the seizure explanation, emergency room personnel decided to contact the police.
The State introduced the opinion testimony of several witnesses as to the cause of K.J.'s internal injuries. Dr. Gilhully expressed his medical opinion that the injuries were caused by a significant blunt trauma blow to the abdomen. Dr. Charles Frankum, who provided treatment to K.J. at Scottish Rite, testified that a liver injury that severe would be consistent with a high-speed motor vehicle accident and could have been caused only by a very severe blow to the abdominal cavity. Dr. Mark Stovroff, a pediatric surgeon who treated K.J. at Scottish Rite, testified that it would take a tremendous amount of force to cause such an injury. Neither Dr. Frankum nor Dr. Stovroff believed that the injuries could have been caused by an adult stepping on K.J. by accident.
At trial, Allen testified as follows: K.J. had come to live with him, his wife, and three children in late June 1997. In March 1998, he decided to spank K.J. because she had told him for three days in a row that she had not behaved properly at school. He spanked K.J. with a belt and caused the bruises on her buttocks. He originally intended to hit her only three times on the buttocks, but she moved when he tried to hit her, which frustrated him, and he ended up hitting her more times than he intended and on her thigh as well as her buttocks. He admitted that he hit her too hard.
With respect to K.J.'s internal injuries, Allen explained that he and K.J. were outside at night while he was feeding the family dog. He heard K.J. fall and went toward her, tripped over a briar, and stepped on her. Then he picked her up and carried her toward the house. As he got close to the house, her eyes rolled back in her head, and it looked like she was choking on her tongue. He put his finger in her mouth to make sure she could breathe, and she bit it. To free his hand to open the door, he bit her on the cheek. K.J. began vomiting when they got inside so Allen took her to the bathroom, where she fell and hit her chin on the toilet. Then Allen and his wife took K.J. to the hospital. Allen never told the doctors treating K.J. or the investigators that he had accidentally stepped on her.
Allen was charged with cruelty to children in the first degree for maliciously causing K.J. excessive physical pain by repeatedly spanking her (Count 1), biting her in the face (Count 2), and hitting her in the stomach (Count 3). He was charged with aggravated assault for maliciously causing bodily harm to K.J. and disfiguring her body by causing her liver and spleen to be torn (Count 4). Finally, Allen was charged with cruelty to children in the first degree for maliciously causing K.J. excessive mental pain by repeatedly spanking her (Count 5).
1. Allen contends that the trial court committed harmful error by admitting out-of-court statements K.J. made to her licensed professional counselor under the medical diagnosis or treatment exception to the hearsay rule. He claims that the statements were not reasonably pertinent to the diagnosis or treatment of K.J.
In November 1997, K.J. was referred to Margaret Brown (a licensed professional counselor) to be treated for past sexual abuse, anxiety related to a change in her residence, self-injurious behavior, and sleep disturbances. Allen called Brown as a witness, and she testified about K.J.'s problems and her treatment of K.J. During direct examination, Allen's counsel elicited numerous hearsay statements to which there were no objections. On cross-examination, the State sought to introduce a statement that K.J. had made to Brown on May 26, 1998. K.J. had told her that she did not want to go back to her aunt's house because she did not want to go back to the hospital. She had said that Allen had stomped on her and pushed her into the mud, taken her inside, and later had taken her to the hospital.
Prior to introducing the statement, the State sought a ruling from the court as to its admissibility. The court allowed both parties extensive argument on this issue and allowed them to question Brown, outside the presence of the jury, about the significance of the statement to K.J.'s treatment. Brown testified that part of K.J.'s therapy was her acknowledgment of the bad things that had *48 happened to her and how they made her feel so that she could appropriately deal with them. She testified that the statement was pertinent to K.J.'s ongoing counseling and that it was important information needed to treat K.J. Based on Brown's testimony, the trial court found that the statement was pertinent to K.J.'s treatment and was admissible, but did not allow Brown to mention Allen's name.
We review the trial court's admission of K.J.'s statement under the abuse of discretion standard.[1]
Pursuant to OCGA § 24-3-4,
[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment shall be admissible in evidence.
The history a patient gives to a psychologist,[2] nurse,[3] pediatrician,[4] or emergency room physician[5] during examination or treatment has been held admissible under this exception to the hearsay rule. We find that the same rule is applicable when such information is given to a licensed professional counselor. Based on Brown's testimony, we find that the trial court did not abuse its discretion by admitting K.J.'s statement as reasonably pertinent to her treatment.
2. Without invoking the child hearsay statute,[6] Allen sought to impeach K.J.'s hearsay statement to Brown with two prior inconsistent statements K.J. made to Douglas County Sheriff's Investigator Wilson. The State did not object to the admission of the statements, but argued that it should be allowed to introduce consistent statements made by K.J. to Investigator Wilson. The court ruled that neither the prior inconsistent nor the prior consistent statements would be admissible absent compliance with the child hearsay statute. Allen claims that the trial court committed harmful error.
Although there appears to be no Georgia precedent for allowing impeachment of a hearsay declarant whose statements have been admitted into evidence under the medical diagnosis or treatment exception, Georgia appellate courts have allowed impeachment of dying declarations[7] and statements admitted as part of the res gestae.[8] In Smith v. State,[9] the Supreme Court of Georgia stated that impeachment of hearsay admitted through the excited utterance and necessity exceptions ordinarily should be permitted. The medical diagnosis or treatment exception to the hearsay rule is "based upon the inherent trustworthiness of medical information given by a patient to a medical provider, in view of the patient's strong motivation to be truthful during diagnosis and treatment."[10] Because the statement is hearsay, the credibility of the declarant cannot be attacked on cross-examination. "Impeachment, therefore, is the only method by which a party can attack the credibility of the hearsay declarant and, thus, the accuracy of the statement."[11] We hold that a party must be given the opportunity to impeach the credibility of a declarant whose statement is admitted under the medical diagnosis or treatment exception to the hearsay rule.
*49 As noted in Brantley and Smith, our ruling is consistent with Federal Rule of Evidence 806, which allows the impeachment of a hearsay declarant with any evidence that would be admissible for impeachment purposes if the declarant had testified as a witness.[12]
We find that the trial court erred by refusing to allow Allen to introduce, without invoking the child hearsay statute, the prior inconsistent statements solely to impeach the out-of-court statements admitted under the medical diagnosis or treatment exception to the hearsay rule, which also were admitted without invoking the child hearsay statute. We now must decide if the exclusion of those statements constituted harmful error.
Allen sought to introduce the following two statements made by K.J. to Investigator Wilson, who did not testify: on March 30, 1998, K.J. denied that she was stomped upon; and on May 8, 1998, K.J. said she thought that Allen had stepped on her a little. Allen wanted to impeach K.J.'s May 26, 1998 statement to Brown that she was stomped on and pushed into the mud.
Several other prior inconsistent statements were admitted without objection. On March 19, 1998, K.J. told Dr. Frankum that she did not remember what had happened and told Douglas County Investigator Michael Howell that she had fallen down. On March 20, 1998, K.J. told a school counselor that she had fallen over a tree. And on May 4, 1998, K.J. told Dr. Sean Allen, a psychiatrist who was treating her, a version completely different from the one described to Brown. Dr. Allen's statement was admitted during Allen's examination of Brown, shortly following the statement Allen sought to impeach. Under these circumstances, the evidence Allen sought to present was cumulative and its exclusion was harmless error.[13]
3. Allen claims that the trial court committed harmful error by refusing to charge the jury on the lesser included offense of reckless conduct for Counts 1, 2, 3, and 5, all of which allege cruelty to children in the first degree.
"Any person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain."[14] A person engages in reckless conduct when such person
causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.[15]
"Thus, the crime of reckless conduct is, in essence, an instance of criminal negligence, rather than an intentional act, which causes bodily harm to or endangers the bodily safety of another."[16] We have previously found reckless conduct to be a lesser included offense of cruelty to children.[17]
We must determine if the evidence authorized a charge on reckless conduct.
(a) Counts 1 and 5. Allen admitted that he had spanked K.J. with a belt and that he had intended to cause her pain. He hit her more times and in more locations than he had originally intended because he became agitated that she moved to try to avoid the blows. Allen admitted that he had intended to hit her each time, that he had determined how hard to hit her, and that he had hit her as many times as he did because he was agitated, bothered, and frustrated that she would not stand still and take the punishment.
Allen's reliance on Bowers[18] and Reinhardt v. State[19] is misplaced. Unlike the defendant *50 in Bowers, who fired a shot during target practice and unintentionally hit the victim, or the defendant in Reinhardt, who accidentally started a motel fire while smoking in bed and killed another guest, Allen intended his actions and intended to cause pain. The actions he testified to were not acts of criminal negligence. The trial court did not err by refusing to instruct the jury on the law of reckless conduct on Count 1 or Count 5.
(b) Count 2. Allen admitted that he had bitten K.J. intentionally on the side of the face so that she would stop biting his fingers. The trial court did not err by refusing to instruct the jury on the law of reckless conduct on Count 2.
(c) Count 3. Allen testified that he stepped on K.J. accidentally. The State presented evidence that his actions were intentional. The jury was fully charged on both theories. Allen's argument that the jury could have found that he disregarded a substantial and unjustifiable risk of injury by taking K.J. outside in the dark to feed the dog is without merit. The trial court did not err by refusing to instruct the jury on the law of reckless conduct on Count 3.
4. Allen argues that the trial court committed harmful error by refusing to instruct the jury on the lesser included offense of battery on all counts.
A person commits the offense of battery when such person "intentionally causes substantial physical harm or visible bodily harm to another."[20] Depending on the facts alleged in the indictment and the evidence presented at trial, battery may be a lesser included offense of cruelty to children as a matter of fact.[21]
Allen claims that the jury could have found that he performed all acts alleged in the indictment, but did so without malice, thus justifying a charge on battery. For purposes of the child cruelty statute,
"malice in the legal sense[] imports the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm produced, or the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm may result. Intention may be manifest by the circumstances connected with the perpetration of the offense...."[22]
(a) Counts 1, 2 and 5. Allen presented evidence that his spanking of K.J. was justified as reasonable parental discipline. The State presented evidence that the spanking went far beyond any reasonable parental discipline. With respect to the bite marks on K.J.'s face, Allen testified that he merely "pinched" K.J.'s face with his teeth so that she would release her grip on his fingers because he was worried that he would drop her on the concrete. He testified that he did not intend to leave bite marks on her cheek. The State presented evidence that Allen bit K.J. hard enough to leave teeth marks on her cheek and a large bruise. The State also presented evidence that Allen's claim that K.J. had had a seizure, which required him to put his fingers in her mouth, was doubtful.
Based on the evidence, Allen was guilty either of cruelty to children or of no crime. If the evidence shows the completed offense, as charged, or no offense, the trial court is not required to charge the jury on the lesser included offense.[23] The trial court did not err by refusing to give an instruction on battery on Counts 1, 2, and 5.
(b) Counts 3 and 4. Counts 3 and 4 relate to K.J.'s internal injuries. Count 4 alleged aggravated battery, which is committed when a person "maliciously causes bodily harm to another by ... seriously disfiguring his or her body or a member thereof."[24] Allen presented evidence that he had stepped *51 on K.J. by accident, a principle on which the jury was fully charged. The State presented evidence that he maliciously struck her in the abdomen and caused severe and permanent damage to her liver and spleen. If it was an accident, no battery was committed. If the evidence shows the completed offense, as charged, or no offense, the trial court is not required to charge the jury on the lesser included offense.[25] Allen has not pointed to any evidence that would suggest the offense of battery as to these counts; thus, there was no error in failing to give a charge on the lesser offense.[26]
Judgment affirmed.
JOHNSON, C.J., and SMITH, P.J., concur.
NOTES
[1] Gilmer v. State, 234 Ga.App. 309, 310(2), 506 S.E.2d 452 (1998).
[2] In the Interest of C.W.D., 232 Ga.App. 200, 208-209(4), 501 S.E.2d 232 (1998).
[3] Roberson v. State, 187 Ga.App. 485, 486, 370 S.E.2d 661 (1988); Sparks v. State, 172 Ga.App. 891, 892(2), 324 S.E.2d 824 (1984).
[4] State v. Butler, 256 Ga. 448, 449, n. 1, 349 S.E.2d 684 (1986); Allen v. State, 174 Ga.App. 206, 208(2), 329 S.E.2d 586 (1985).
[5] Miller v. State, 194 Ga.App. 533, 534(2)(a), 390 S.E.2d 901 (1990).
[6] OCGA § 24-3-16.
[7] Johnson v. State, 169 Ga. 814, 825(4), 152 S.E. 76 (1930).
[8] Brantley v. State, 177 Ga.App. 13, 16-17(3), 338 S.E.2d 694 (1985).
[9] 270 Ga. 240, 244(5), 510 S.E.2d 1 (1998).
[10] (Citation omitted.) Barone v. Law, 242 Ga. App. 102, 104(1), 527 S.E.2d 898 (2000).
[11] Brantley, supra at 16, 338 S.E.2d 694.
[12] Id. at 17, 338 S.E.2d 694; Smith, supra.
[13] See Brooks v. State, 236 Ga.App. 604, 605-606(2), 512 S.E.2d 693 (1999).
[14] OCGA § 16-5-70(b).
[15] OCGA § 16-5-60(b).
[16] (Emphasis omitted.) Bowers v. State, 177 Ga. App. 36, 38(1), 338 S.E.2d 457 (1985).
[17] See Hill v. State, 243 Ga.App. 614, 616, 533 S.E.2d 779 (2000); Brady v. State, 246 Ga.App. 412, 541 S.E.2d 396 (2000).
[18] Supra.
[19] 263 Ga. 113(2), 428 S.E.2d 333 (1993).
[20] OCGA § 16-5-23.1(a).
[21] Bennett v. State, 244 Ga.App. 149, 151-152(2), 534 S.E.2d 881 (2000).
[22] (Citation omitted.) Stokes v. State, 204 Ga. App. 586, 587-588(2), 420 S.E.2d 84 (1992).
[23] Martin v. State, 268 Ga. 682, 685(7), 492 S.E.2d 225 (1997).
[24] OCGA § 16-5-24(a).
[25] Martin, supra.
[26] See id.